Towle, Appellant, vs. Towle, Respondent.

*April 11 — May 5, 1891.*

*Contract to devise by will: Election of benefit: Estoppel.*

In an action against the widow, as sole heir, of a deceased person, to enforce specific performance, as to the land, of a contract by the deceased to devise to the plaintiff one half of his farm and certain personal property, it appeared that he by his will devised to the plaintiff only a life-estate in one half the farm, on condition that he should occupy it; but also gave him the income for life of a certain fund; and that he had received the income of the fund to an amount in excess of the value of the property he was to have under the contract; and that he qualified as one of the executors of the will, and inventoried the land and personal property as part of the estate; and that he had continued in possession of one half the farm

Towle vs. Towle.

some twelve years without attempting to assert his rights under the contract. *Held*, that the provisions of the will were intended by the testator as a substitute for the contract, and that the plaintiff by his acceptance of the benefit thereof had elected to abandon his rights under the contract, and was estopped from enforcing the same.

APPEAL from the Circuit Court for *Green Lake* County.

This action was brought by the plaintiff, *Samuel Towle*, against the defendant, *Lozira W. Towle*, who is the widow and heir at law of James Towle, deceased, to enforce specific performance, in part, of a contract, in and by which James agreed to devise to *Samuel* an undivided one-half of his farm of eighty acres in Green Lake county, Wis., and to bequeath to him certain personal property hereinafter mentioned. The facts, as they appear by the pleadings, evidence, and findings of the court (concerning which there is no material controversy), are as follows:

In October, 1873, James Towle, then residing on his farm in Green Lake county, wrote to his brother *Samuel* (the plaintiff), then residing in Maine, urging the latter to remove to Wisconsin, and assist in carrying on such farm, offering to furnish *Samuel* a house to live in, to give him one half the income of the farm, to devise to him one half of the farm, and to bequeath to him one half the stock and farming tools thereon. The defendant joined with her husband in this proposition. *Samuel* accepted the offer, and a year later removed to Wisconsin, and assisted in carrying on the farm until February, 1876, when James died. James left a widow (the defendant), but no issue. He left a will, which was thereafter duly probated in the proper court. In and by such will he devised to his widow a life estate in one forty acres of the farm, which lot was his homestead, and bequeathed certain money and personal property to her, including such stock and farm tools. He also devised to *Samuel* the other forty acres of the farm during his life,

on condition that he reside thereon. He also bequeathed to *Samuel* the income of a fund provided for in his will, the principal of which amounted to $7,042.04, which was invested under the direction of the court, and the income thereof regularly paid over to *Samuel* in each year, until and including the year 1889. The amount thus received by *Samuel* is $5,688. The last payment was made July 15, 1889. *Samuel* procured assignments from all the legatees, among whom the will provided the fund should be distributed on the death of *Samuel*, of their interest in the fund. On due proof of such assignments, and about the time of the last payment of income, the county court ordered the whole fund paid over to *Samuel*, and it was paid to him accordingly. The value of the stock and farm tools thus bequeathed to the defendant was $1,072.

Because of his outstanding life interest in the income of the fund above mentioned, *Samuel* paid such legatees for such assignments about $2,200 less than the amount of the fund.

*Samuel* and two others were named as executors in the will, all of whom qualified and acted as such. *Samuel* joined in the inventory of the estate, which contained all of the property, real and personal, of which James died seised or possessed; and also in the final accounting of the executors, on which the order of the court was made distributing the estate as provided in the will. It does not appear that he ever asserted his right under the contract with James further than to mention the matter to one of his co-executors, and perhaps to the county judge, soon after James died. He instituted no proceedings to enforce the contract until this action was brought, but accepted all the provisions of the will in his favor. The value of the homestead forty acres, when James died, was $2,400, and of the other forty acres, $2,000.

The plaintiff seeks in this action to obtain the judgment

of the court, establishing in himself the absolute title to the forty acres, in which the will gives him only a conditional life-estate. He asks no relief in respect to the stock and tools.

After a trial of the action, the circuit court gave judgment dismissing the complaint, with costs. The plaintiff appeals from such judgment.

*A. E. Dunlap,* for the appellant, argued that the plaintiff was not estopped by his receiving the benefit of the will. An estoppel by election cannot be extended beyond the instrument to which it applies, or the property actually disposed of by the will. He can only be estopped by his having accepted the will, from setting up any claim which will defeat some of its provisions. *Wilby v. Wilby,* 2 Ves. & B. 190. 1 Pomeroy, Eq. Jur. § 469. A party who would avail himself of the plea of estoppel as a defense must show that he would be injured as to some rights under the instrument, if the party be not held estopped. Herman, Estoppel, § 783, and cases cited. His claiming the fee cannot injure the defendant as to any rights coming to her through the will. He was in possession of the land in question at the death of the testator, under the contract sought to be enforced, and his continued possession was under that, and not under the will. To estop the plaintiff on the principle of satisfaction, it must appear that the provision of the will was intended as satisfaction. Story, Eq. Jur. §§ 1030, 1101, 1102, 1099; *Graham v. Graham,* 1 Ves. Sr. 262.

*John J. Wood, Jr.,* for the respondent.

Lyon, J. Certain provisions in the will of James Towle are in direct conflict with the terms of the contract between him and his brother *Samuel.* If *Samuel* can enforce such contract, he is entitled under it, not to a specific forty acres of the farm of James, but to an undivided one-half of the whole eighty acres constituting the farm. The devise to

the widow of the testator of a life-estate in the homestead forty acres is therefore hostile to the terms of the contract. So, also, is the bequest to her of the stock and farming tools which *Samuel* was to have under the contract. The enforcement of the contract would defeat such bequest, and, inasmuch as the defendant joined in the contract, its enforcement would probably defeat the life-estate of the widow in the homestead forty acres. It matters not that *Samuel* does not claim the stock and tools in this action, but only the land. His right to such personal property rests upon the same grounds as his right to the land, and, if he may enforce the contract as to the land, he may also enforce it as to such personal property. Neither is it material that he claims a specific forty acres of the farm without claiming an interest in the homestead forty acres. He can recover only upon the ground that the contract, and the whole of it, is enforceable in equity, and he cannot change the legal or equitable *status* of himself or the defendant by waiving some of his rights under it.

The will itself furnishes abundant intrinsic evidence that James intended the provisions therein in favor of *Samuel* should be a substitute for the contract. If such was not his intention, he would not have devised and bequeathed to others the property to which *Samuel* was entitled under the contract. He doubtless supposed he was giving *Samuel* much more than the latter would have taken under the contract. The event shows that he was correct in this supposition, for *Samuel* had realized out of the income of the fund above mentioned more than double the value of the property which the contract gave him, besides the $2,200 discount which he obtained of the legatees when he purchased their interest in the fund. This $2,200 takes the place of and represents the future income from the fund. That is to say, in substance and effect, it is an advance payment of income estimated upon the probable duration of *Samuel's* life.

Towle vs. Towle.

There is another consideration bearing upon the equity of this case. It is reasonable to assume that, had James supposed *Samuel* would insist upon a performance of the contract, he would not have bequeathed to *Samuel* the income of such fund, but would have given the fund directly to the legatees, who, under the will, were to take it at the death of *Samuel*. On this theory, those legatees have suffered a loss of nearly $8,000 by reason of the fact that *Samuel* took all he was entitled to under the will before he sought to enforce the contract. Under the above circumstances, the case is governed by the well-established rule in equity that " a person who has taken a beneficial interest under a will is thereby held to have confirmed and ratified every other part of the same, and he will not be permitted to set up any right or claim of his own, however legal and well founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will. . . . The only question in such a case is, Did the testator *intend* (judging from the face of the will) that the property should go in such a manner? It is immaterial whether the testator thought he had the right, or, knowing the extent of his rights, intended, by an arbitrary exercise of power, to exceed them; in either case, the party accepting the gifts of the will can only take the property on the terms, or the equity of the terms, upon which it was given." Bigelow, Estop. (5th ed.), 674. True, there are certain qualifications and limitations of the above rule, but none of these reach or affect this case, which is clearly within the rule. The circuit court so held.

*By the Court.*— Judgment affirmed.