WALTER ROSS, Appellant, v. FIRST PRESBYTERIAN CHURCH OF STOCKTON, OMER WASSON and WALLACE WASSON.

Division Two, August 28, 1917.

1. **HEIRSHIP:** Illegitimate Child. The right of a plaintiff to claim title to land as the heir of the testator, who by will gave a life estate to his wife, is precluded by testator's death on February 15, 1860, and the birth of plaintiff to said widow on May 31, 1861.

2. ———: ———: Heir of Mother. A child of the testator's widow who took no steps to enlarge the life estate given her by the will into a fee in one-half the land as authorized by statute, cannot claim title in the land as heir at law of such widow.

3. **WIDOW'S ELECTION:** Acquiescence in Will: Limitations. In the absence of evidence to the contrary, it must be presumed that the widow, who probated her husband's will and qualified thereunder as executrix, and which gave her a life estate in all his lands, elected to take under the will; and being thus seized, she could not deal with the property in such a manner as to start the Statute of Limitations running adversely to the rights of the remaindermen.

4. **CONVEYANCE BY LIFE TENANT.** A deed by the life tenant conveys to the grantee no such title as will enable him to successfully assert an interest in the land after the life tenant's death. The life tenant's interest terminated upon her death, and cannot be enlarged by her conveyance.

5. ———: Limitations. Whatever may have been the character of the holding of the land by the grantee of the life tenant, he cannot claim title by limitations, or defeat the rights of remainder-

men, if sufficient time has not elapsed since the life tenant's death to sustain a claim under the Statute of Limitations.

6. **APPEAL: Rulings Limited to Adjudication of Appellant's Claims.** On appeal the rulings must be limited to the errors of which appellant complains. So that where plaintiff, who claims, first, as heir of the testator, second, as heir of testator's widow, and, third, as grantee of the life tenant, is the only appellant, the court cannot review the adverse claims of the defendants, who filed cross-bills, and to whom the court adjudged the land in controversy in equal moities.

Appeal from Cedar Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Faulke & Brown* and *John B. Cole* for appellant.

(1) The will of Hugh Ross is an instrument inoperative and void as to passing any interest in the real estate in controversy to the defendant claimant, the First Presbyterian Church of Stockton. (a) The will of Hugh F. Ross bears date February 10, 1860, and was admitted to probate March 31, 1860. The First Presbyterian Church of Stockton was not created or in existence, until November 20, 1903, that is, it was not in legal existence until about forty-four years after the will was executed. Douthitt v. Stinson, 63 Mo. 268. (b) The defendant church could not acquire title from a parent incorporated body because at the date Hugh F. Ross died the Missouri Constitution of 1820 was in force and thereby it was provided "that no religious corporation can ever be established in this State." Proctor v. Board of Trustees, 225 Mo. 52; Constitution 1820, art. 13, sec. 5. (c) Because the grant was not to any person, or persons, association or committee then existing or in being definitely pointed out or designated. Board of Trustees v. May, 201 Mo. 360; Wells v. Fuchs, 226 Mo. 106. (2) The will of Hugh Ross either vested in the "Old School" Presbyterian Church at Stockton, Missouri, the whole remainder

in his 560 acres of land in controversy, or his will became wholly invalid and inoperative as to such remainder. Courts cannot make wills for deceased persons. Lockridge v. Mace, 109 Mo. 162; Sevier v. Woodson, 205 Mo. 202; Board of Trustees v. May, 201 Mo. 360, 264 Mo. 533; Hadley v. Forsee, 203 Mo. 418. (3) The plaintiff, not having been provided for in his father's will, although born after his father's death, was entitled to inherit notwithstanding the will. 1 R. S. 1855, p. 660, sec. 2; G. S. 1865, chap. 129, sec. 2; R. S. 1879, sec. 2162; R. S. 1889, chap. 51, sec. 4466; R. S. 1909, art. 5, sec. 333. Defendants having imputed to the mother of the plaintiff the character of a woman bad for virtue and chastity, plaintiff offered to prove that his mother's general reputation for virtue and chastity, from the time of Hugh Ross's death until she died was good, by witnesses present in court, which offer the court excluded. "The law presumes that every woman is chaste, until the contrary appears." State v. Kelley, 191 Mo. 691. Where immoral or illegal acts are sought to be imputed in any civil or criminal proceeding to a party and the conduct of such party in the respect impugned or sought to be impugned becomes a matter for judicial consideration, then, and in every such case, the general reputation of the parties so assailed is competent toward rebutting the commission of the imputed offense. Greenleaf on Evidence (14 Ed.), p. 82, sec. 54; Gutzwiller v. Lackman, 23 Mo. 168; Rogers v. Troost, 51 Mo. 470. (4) The trial court overlooked, or ignored the pleadings and the evidence as to the actual, open, notorious, continuous, exclusive and adverse possession of the plaintiff in the claim of ownership for more than 30 years. R. S. 1909, sec. 1879; R. S. 1909, sec. 1882.

*S. E. Osborne, W. R. Hawkins* and *Mann, Todd & Mann* for respondent First Presbyterian Church of Stockton, Missouri.

(1) The will is not inoperative and void, and the bequest of the proceeds of the sale of the land to be devoted to the building of a house of worship at Stockton, Missouri, for the benefit of the Old School Presbyterian Church is valid, because: (a) It is a devise to a public charity. 3 Pomeroy's Equity (3 Ed.), sec. 1021; Schmidt v. Hess, 60 Mo. 591; Hadley v. Forsee, 203 Mo. 418; Russell v. Allen, 107 U. S. 163; 6 Cyc. 913; Attorney-General v. Briggs, 42 N. E. 118; Attorney-General v. Trinity Church, 91 Mass. 422. (b) A charitable gift will not be permitted by a court of equity to fail because of the non-incorporation of the society to whom or for whose benefit the conveyance was made, or for the lack of trustee. The power of the courts of equity to administer such trusts belongs to its general jurisdiction as a court of chancery, and is not derived from the statutes of Elizabeth. The fact that there was no organized or incorporated church at Stockton in 1860 when the will was made does not invalidate the bequest. Buckley v. Monk, 187 S. W. 31; Missouri Historical Society v. Academy of Science, 94 Mo. 459; Schmidt v. Hess, 60 Mo. 391; Chambers v. St. Louis, 29 Mo. 453; Russell v. Allen, 107 U. S. 163; 2 Perry on Trusts (3 Ed.), sec. 687-700; 6 Cyc. 914. (c) Public uncertainty as to the individual to whom the benefit reaches does not defeat the gift, but on the contrary is one of the features that distinguishes a public from a private charity. And the courts will enforce it if the donee sufficiently shows his intention to create a charity and indicates its general nature and purpose, and described in general terms the classes of the beneficiary. 3 Pomeroy's Equity (3 Ed.), sec. 1025; 6 Cyc. 936; 40 Cyc. 1469-1471. (d) Gifts to charitable uses have always received favorable consideration by the courts. Chambers v. St. Louis, 29 Mo. 543; Academy of the Visitation v. Clemens, 50 Mo. 167; Schmidt v. Hess, 60 Mo. 591; Howe v. Wilson, 91 Mo. 45; Missouri Historical Society v. Academy of Science, 94 Mo. 459; Powell v. Hatch, 100 Mo. 592; Barclay v.

Donnell, 122 Mo. 561; Sappington v. Trustees, 123 Mo. 32; Lackland v. Walker, 151 Mo. 210; Hadley v. Forsee, 203 Mo. 418. (e) A bequest for charitable uses is valid even though there be no trustee appointed to carry it into effect. The court of equity will either appoint a trustee or execute the trust itself. 1 Perry on Trusts, sec. 249; Mormon Church v. United States, 157 U. S. 57; 3 Pomeroy's Equity (3 Ed.), sec. 1026; In re John's Estate, 36 L. R. A. 242. (f) The contention of appellant that the defendant church could not acquire title from a parent incorporated body because at the date of the death of Hugh F. Ross, the Constitution of 1820 was in force, which provided that no religious corporation can ever be established in this State, has no force and effect here. (1st) Because the defendant church has not acquired title and is not seeking to acquire title to the 560 acres of land in controversy. The bequest to it by the will of Hugh F. Ross was not of the land. The bequest was that the land be sold and the proceeds used to build a house of worship for the benefit of 'the Old School Presbyterian Church at Stockton. Such property, to-wit, houses of worship, churches have always had the right under any and all constitutions of the State to hold. (2nd) The parent church was never incorporated. Its trustees were, in 1899. The incorporation of the trustees of the General Assembly is not the incorporation of the church itself. Trustees of the General Assembly v. Guthrie, 6 L. R. A. 321. (3rd) Because the appellant Walter Ross having no right, title, interest or estate whatever in the land in controversy, can raise no such question by this appeal. Having no interest himself, he cannot question the validity of the will as to the church. Barkley v. Donnelley, 112 Mo. 570; Wheeler v. Land Co., 193 Mo. 291; In re McGraw, 2 L. R. A. 387, 136 U. S. 152; McKeorm v. Officer, 127 N. Y. 687; Patton v. Patton, 39 Ohio St. 500. (4th) The church did not lose its existence or organization by incorporating. It still has an association capable of appropriat-

ing and using and enjoying the house of worship when it is built from the proceeds of the sale of the land in controversy. Catholic Church v. Tobbien, 82 Mo. 424; Lilley v. Tobbien, 103 Mo. 488. (g) The church did not take under the will then and there; that is, upon the death of Hugh Ross, as asserted by appellant. The trust created was an active trust, the trustees to be appointed by the court under its equity power being charged with the sale of the property, the building of the church or the turning over of the proceeds of the sale to the proper officers of the church for that purpose. The Statute of Uses does not apply to an active trust. Webb v. Hayden, 166 Mo. 39; Garland v. Smith, 164 Mo. 1; Simpson v. Erisner, 155 Mo. 157; Newton v. Rabenack, 90 App. 651; Carter v. Long, 181 Mo. 701. (h) The direction in the will that the land be sold and the proceeds used to build a house of worship in Stockton for the benefit of the Old School Presbyterian Church was a request of the proceeds of the sale of the land and not of the land to the church. Sanitarium v. McCune, 112 Mo. App. 332; Shepherd v. Clark, 38 Ill. App. 66; Methodist Church v. Smith, 56 Md. 362.

*Parks & Son* for respondents, Omer Wasson and Wallace Wasson.

(1) Under our law, a legitimate child is one who is born in lawful wedlock, or of a widow within ten months after the death of her husband, or who is born before the marriage of its parents, who afterwards marry and the child then receives the recognition of its parents. Gates v. Seibert, 157 Mo. 272; Martin v. Martin, 250 Mo. 545. A bastard at common law is one, not only begotten but born out of lawful wedlock, or not within a competent time after its determination, etc. 3 Am. & Eng. Ency. Law, 872. The general reputation and common report of the neighborhood is generally held to be admissible in questions of legitimacy. 5 Cyc.

630   (3).   Evidence of the resemblance of the child to the putative father, has been held competent.   5 Cyc. 630 (4).   (2) Mere possession does not create title by limitation, however long continued; to have such effect, the possession must be open, notorious, continuous, and adverse and hostile to the true owner, under color of adverse title, or under a claim of ownership, hostile to the true owner.   Crowl v. Crowl, 195 Mo. 338.   The presumption is that every possession is rightful, consistent with and not in opposition to or adverse to, the true title and ownership; and one who relies on adverse possession must offer sufficient proof to rebut this presumption.   Hecksecker v. Cooper, 203 Mo. 278.   A possession friendly in its inception begun in subordination to the true title, does not change into a hostile one by a mere change of mental attitude but continues friendly, unless, by open and unequivocal acts, equivalent to ouster or disseizen, and sufficient to bring home notice to the true owner, it has been changed into one adverse and hostile to him.   McCune v. Goodwillie, 204 Mo. 306; Mo. L. & L. Co. v. Jewell, 200 Mo. 707; Williamson v. Brown, 195 Mo. 313; Coberly v. Coberly, 189 Mo. 1; Handlan v. McMann, 100 Mo. 124; Wilson v. Lerche, 90 Mo. 473; Pitzman v. Boyce, 111 Mo. 387.   Grantees of life tenants can no more contest the remaindermen's title by adverse possession than could life tenants themselves.   Their possession, if adverse to an outstanding title, inures to the benefit of the remaindermen.   Charles v. Pickens, 214 Mo. 212.   When a party is in possession of property in priority with the rightful owner, nothing short of an open and explicit disavowal and disclaim of a holding under that title, and assertion of title in himself, brought home to the owner, will satisfy the law, or lay a foundation for the operation of the Statute of Limitations.   Gordon v. Evans, 97 Mo. 587.   Adverse possession cannot run against the remaindermen, during the lifetime of the tenant for life.   Swearingen v. Stafford, 188 S. W. 98; Roberts v. Thomasson, 174 Mo. 378; Meddis v. Kenny, 176 Mo. 200; Brown v. Moore,

74 Mo. 633; Moran v. Stewart, 246 Mo. 462; Shoultz v. Lee, 260 Mo. 719. The possession of the life tenant is not adverse to the remaindermen. McThurston v. Farley, 194 Mo. 502. The Statute of Limitations does not begin to run against reversioner until the death of the life tenant. Reed v. Lowe, 163 Mo. 579; Linville v. Greer, 165 Mo. 380; Hall v. French, 165 Mo. 430; Westmeyer v. Gallenkamp, 154 Mo. 28; Rothwell v. Jamison, 147 Mo. 601; Carey v. West, 139 Mo. 185; Roberts v. Nelson, 87 Mo. 229; Dyer v. Brannock, 66 Mo. 391; Bradley v. Ry. Co., 91 Mo. 493. Where land is in possession and occupancy of one who holds it by reason of his purchase from widow, the Statute of Limitations does not begin to run in his favor as against the owner of the title until dower is assigned or the widow dies. Osborn v. Welden, 146 Mo. 185.

WALKER, P. J.—This suit was commenced in the circuit court of Cedar County under the provisions of Section 2535, Revised Statutes 1909, to ascertain and determine title to the land described in the petition. The defendant the Presbyterian Church of Stockton answered denying that the plaintiff or its co-defendants, the Wassons, had any interest in the land, and by cross petition alleged that under the will of one Hugh F. Ross it became the residuary legatee of said Ross and prayed that the court appoint a special trustee or master in chancery to sell the land and pay over the proceeds to the trustee of said church.

The plaintiff answered this cross petition, alleging that the defendant Church took nothing by reason of or under the will of said Hugh F. Ross and that plaintiff was the owner in fee of the land and prayed the court to so adjudge.

The defendants Wasson answered denying that either the plaintiff or the Church had any interest in the land, and filed a cross petition setting up that they were the owners in fee of the land as the heirs of Hugh F. Ross and prayed the court to so adjudge.

Plaintiff answered the defendants Wassons' cross-bill, denying that they had any title to or interest in the land in question as the heirs of said Hugh F. Ross or otherwise, and alleged title in fee in the plaintiff.

The defendants Wasson denied the allegations in plaintiff's answer. The issues being made up upon the cross petitions of the respective defendants and the plaintiff's answer thereto and the reply to such answer, plaintiff dismissed as to his petition and the cause went to trial on the issues thus made.

On the application of the plaintiff a change of venue was awarded to the circuit court of Polk County, resulting upon a trial in a finding for the defendants.

The controversy involved: (1) the construction of the will of Hugh F. Ross, (2) the legitimacy of Walter Ross as a son of Hugh F. Ross, and (3) the application of the Statute of Limitations.

Hugh F. Ross is the common source of title. He died testate in February, 1860, seized of the land in controversy, which consisted of about 500 acres on Sac River. He left surviving him a widow but no issue. Two children born of this marriage had died in infancy. The clause of Hugh F. Ross's will upon which the controversy herein is based is as follows:

"That is to say, first, after all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath and dispose of as follows, to-wit: To my well beloved wife, Caroline Ross, the following described tract or parcel of land, to-wit [here the land in controversy is described as in plaintiff's petition], containing five hundred and forty acres. Said tract or parcel of land being the farm on which I now reside, known as the Ross farm, to have and to hold the same together with all the rents, profits and advantages of the same during her natural lifetime; and after her death to be sold and the proceeds thereof to be applied to the erection of a house of worship in the town of Stockton, for the use and benefit of the Old School Presbyterian Church.''

After the death of Hugh F. Ross his wife continued to live on the land, and about May 31, 1861, gave birth to the plaintiff. Six years after the death of Hugh F. Ross his widow married one John F. Kennedy. Plaintiff lived on the land with his mother and step-father until 1877, when, upon his marriage, he took possession of about one-half of the land and cultivated same, and in 1888 erected a dwelling thereon which he and his wife continued to occupy and were in possession of at the trial of this cause in June, 1912.

In March, 1900, his mother and her husband made and delivered to him a warranty deed to all of the land in controversy. Thereafter he made many permanent and valuable improvements thereon and continued to occupy and use the land, exercising all the rights of ownership thereto. The mother of plaintiff died in March, 1910. At the time of her death there was no Presbyterian church in the town of Stockton. The incorporation of a church organization of that faith was effected at Stockton on the 22nd day of March, 1904. The membership at and since that time has been small, no church edifice has been erected and the meetings have been irregular. There is no showing that prior to 1910 any organization styling itself the "Old School Presbyterian Church of Stockton" sent any representatives to a meeting of the Presbytery of that district. No formal steps have ever been taken by any church of the faith named to accept the trust created by the will of said Hugh F. Ross. This is substantially all the evidence upon which the defendant Church bases its claim to the land in question.

The defendants Wasson base their claim to the land upon a right of descent from their mother, who was a widow of John E. Ross, a brother of Hugh F. Ross, the common source of title. Hugh F. Ross left surviving him no one entitled by blood to inherit from him except the brother, John E. Ross, who survived him ten years and died in 1870. John E. Ross left no issue or others capable of inheriting by reason of consanguinity and

it is contended that under the statute his widow, who survived him, was the only person capable of inheriting, and that her right to take became vested upon the death of her husband subject to the life estate of the widow of the testator. The widow of John E. Ross in April, 1874, intermarried with one John Wasson, by whom she had two sons, who survived her and who are the individual defendants here. The mother of these defendants died intestate in October, 1910, and her husband died in November, 1911.

The court, upon the facts stated, found that the plaintiff had no interest in the land, and it having been shown from the admissions and agreements between said Church and the Wassons, defendants, that one-half of the net proceeds of the sale of said property and the net rents and income therefrom until the sale is effected is a proper and adequate sum to be devoted to the purpose of building a house of worship for said church, the court adjudges that the defendant church is entitled under the will of said Hugh F. Ross to have said land sold and conveyed under the direction and through the instrumentality of trustees named and the proceeds arising therefrom divided, one-half to the trustees of the said Church and the other half to the said defendants Wasson as tenants in common, share and share alike. Specific provisions are also made in this finding, not necessary to be set forth in a determination of the question here at issue, among others the naming of trustees to take charge of and account for the rents and profits arising from the land during the pendency of this appeal.

The right of the plaintiff to claim title to the land as an heir at law of Hugh F. Ross is precluded by the death of the latter February 15, 1860, and the birth of the plaintiff May 31, 1861. [Gates v. Seibert, 157 Mo. l. c. 272; Martin v. Martin, 250 Mo. l. c. 545.] Nor can plaintiff's claim of title as an heir at law of his mother, the widow of said Ross, be maintained. Under said Ross's will she only took a life estate in the land; to

this limitation of her tenure she acquiesced by taking no steps to enlarge her interest into a fee to the one-half of said land as then and now authorized by statute (Sec. 5, chap. 56, R. S. 1855; Sec. 351, R. S. 1909). Upon her death, therefore, no inheritable estate was left to the plaintiff. This fact necessitates the conclusion that the deed made to this land in 1900 by the mother and step-father of plaintiff to him conveyed no such title as will enable the plaintiff to successfully assert an interest in such land at this time. Whatever estate was thereby conveyed was limited to the interest of the mother therein and terminated with her death. The nature of an estate by which land is held cannot be enlarged by a conveyance. A grantee cannot take more than the grantor has to convey. [Boothe v. Cheek, 253 Mo. 119; Potter v. Long, 217 Mo. 607; Turner v. Railroad, 130 Mo. App. 535.]

As to the claim of title under the Statute of Limitations, plaintiff's mother probated her husband's, Hugh F. Ross's will and qualified thereunder as executrix. In the absence of evidence to the contrary, and there is none, it must be presumed that she elected to take under the will, which created in her a life estate. Thus seized, she could not deal with the property in such a manner as to start the running of the Statute of Limitations adversely to the rights of the remainderman, who under the will is the residuary legatee. Her deed to plaintiff, therefore, could give him no greater right or claim to title than she possessed and his title, like hers, could only inure to the benefit of the remainderman. [McMurtry v. Fairley, 194 Mo. 502; Charles v. Pickens, 214 Mo. 212; Shoultz v. Lee, 260 Mo. 1. c. 725.] The mother of plaintiff died in March, 1910, and whatever has been the nature of plaintiff's holding of said land since that time, a sufficient period has not elapsed to sustain a claim of title under the statute.

The plaintiff, who is the sole appellant, is the "party aggrieved" within the meaning of the statute (Sec. 2038, R. S. 1909) and our review of this case has

therefore been limited to a consideration of the errors of which he complains. Under this state of facts we are not authorized to review the trial court's ruling that, although the defendant Church is the residuary legatee, the individual defendants are heirs and hence entitled to half of the proceeds of the sale of the land.

It will suffice to say that our affirmance of the judgment below is limited to the finding that the plaintiff is not entitled to recover. All concur; *Williams, J.,* not sitting.