# CHARLESTON.

ELIZABETH ADAMS *et al. v.* ANN ZILLETTA ADAMS *et al.*

AND

ANN ZILLETTA ADAMS, *Exrx., v.* P. W. LIPSCOMB, *Admr. et al.*

Submitted November 13, 1923. Decided December 4, 1923.

1. WILLS—*Remainderman's Death During Lifetime of Life Tenant Held Not to Affect Vesting of Title.*

   Where one devises real property to his wife for life with remainder to a son on condition that the son remains on the home farm and assists in the general management thereof and provides maintenance and support for his father and mother during the remainder of each of their natural lives, and with full knowledge of the provisions so made for him the son complies with the said condition until the death of the father, title to the property so devised vests in the son upon the death of the testator, unaffected by the death of the son during the lifetime of the mother, but subject to the further support of the mother as provided in the will. (p. 193).

2. SAME—*Legatee's Privilege to Take Property at Fixed Price a Personal One.*

   Where a will provides that one "is to have the privilege, or at his option, to take" certain personal property owned by the testator at the time of his death, upon the payment of a sum named, such option is personal to the legatee, and his personal representative or administrator or heirs cannot elect to take such property. (p. 195).

3. SAME—*Acceptance by Widow of Benefits Under Will Estops Her from Renouncing Will.*

   Where the wife of a testator is devised a life estate in real property and is named in the will as executor thereof, and qualifies as such, and accepts benefits under the will by contracting with the remainderman to lease the land devised to a

third party for the purpose of providing maintenance and sup-
port for herself, she is thereby estopped to renounce the will
and elect to take her dower rights in the estate of her de-
ceased husband. (p. 196).

Appeal from Circuit Court, Tucker County.

Separate suits by Elizabeth Adams and others against Ann
Zilletta Adams and others, and by Ann Zilletta Adams, exe-
cutrix, etc., against P. W. Lipscomb, administrator, etc., and
others. Cases consolidated and judgment for defendants in
the first-mentioned case, and plaintiffs appeal, and for plain-
tiff in the last-mentioned case, and defendants appeal.

*Reversed and remanded.*

*A. M. Cunningham* and *Charles D. Smith,* attorneys for
appellants. .

*W. B. & E. L. Maxwell,* for appellees, Samuel McClellan
Adams and others.

*C. O. Strieby,* for Ann Zilletta Adams.

MILLER, PRESIDENT:

The purpose of these two suits, consolidated and heard to-
gether by the circuit court, was to have construed certain
provisions of the last will and testament of George W. Adams,
deceased, and to have determined the rights of the devisees and
heirs of said testator, under his will.

The parts ·of the will material in the disposition of the
questions submitted to the court for determination are as
follows:

"First: I give, devise and bequeath to my beloved
·wife, Angeletta Adams during her natural life, my home
place, composed of the following four tracts of land,
to-wit:—One tract containing 69 acres, upon which is
erected the mansion or dwelling house; one tract con-
taining 46 acres; one tract containing 44 acres; and one
other tract or lot containing 9 acres, all contiguously
located; all of which at her death, is to descend to my
son David Elbert Adams;—provided he remains at
home or upon the premises in a house of his own and
takes control of the business management of the farm

and provides a maintenance for myself and wife during the remainder of our natural lives in all things necessary for our health and comfort and suitable to our age and condition in life—including medical aid and attendance if necessary, and it is my desire that my son David Elbert, remain on the farm with me during my life and assist me in the general management of the farm, and as a compensation therefor he shall have one-half of all farm profits—including the live stock; and at the time of my death he, my said son David Elbert, is to have the privilege, or at his option, to take all personal property owned by me; except what money I may have on hand at that time, of all kinds and description or wheresoever found—including all household and kitchen furniture as well as all farming implements, at the sum and price of Three Hundred Dollars which sum together with whatever other money I may have on hand at the time of my death shall be equally divided between my six children to wit: Samuel McClellan Adams; Melvina Jane Maxwell, wife of Dr. C. H. Maxwell; Philip Benton Adams; Stella F. Shaffer, wife of Harry S. Shaffer; George Ernest Adams and David Elbert Adams, share and share alike.

"I still have on hand at this date three other tracts of land, not herein before disposed of, to-wit: One tract containing 225 acres; one tract containing 74½ acres and the other containing 20 acres; which I expect or want to dispose of during my life time but, in the event of my death occurring before I make such disposal and distribution, my wish and desire is that," (Here testator provided that his son George Ernest Adams should have 100 acres of said 225 acre tract, upon the payment of $700 to Stella F. Shaffer; and further reserved to David Elbert Adams the right and privilege of entering upon and removing from said 100 acres the lime rock from 10 acres thereof;) "and my further desire and wish is, that my said son David Elbert Adams shall have the said tract of 74½ acres at the sum and price of Five Hundred and Twenty-five Dollars, to be distributed as follows: The remaining 125 acres (part of said 225 acres) and the other tract of 20 acres I desire them to be sold by my executrix hereinafter named at public or private sale as she may deem best and proper, and the net proceeds thereof to be equally divided between my three oldest children to-wit: Samuel McClellan Adams, Melvina Jane Maxwell, the wife of Dr. C. H. Maxwell, and Philip Benton Adams, share and share alike.

"Lastly: I hereby appoint my wife Angelletta Adams

the executrix of this my last will and testament and direct that no bond be required of her from the court.''

Testator died January 21, 1921, without having disposed of during his lifetime any of the tracts of land mentioned in the will, and leaving in addition to the real estate, according to some of the pleadings in the cause, tangible personal property worth about $800.00, and money and securities valued at about $4,600.00. Eleven hours after the death of the testator, David Elbert Adams died, intestate, leaving surviving him his wife, Elizabeth Adams, and a daughter, Frances Adams, four years of age.

Testator's will was made in 1907. At that time David Elbert Adams was unmarried and was living with his father and mother on the home farm mentioned in the will, and it appears that he was the only one of the children then residing with them. From the pleadings in the two causes it appears that David Elbert Adams knew of all the provisions and conditions in his father's will from the time it was made. He continued to live with testator until his death, and apparently carried out up to that time the conditions of the will. He was married to Elizabeth Lipscomb in 1911, and shortly thereafter erected an addition to the dwelling house in which both families were then living, but continued to occupy with his wife a part of the original building also. He assisted his father in farming, not only the home place, but also the 225 acres, receiving one-half the farm products, as provided in the will, and for the last year or two, after testator, who was 84 years of age at the time of his death, became unable to work as in former years, he received two-thirds of the profits of the several farms, though it is denied by Ann Zilletta Adams in her answer to the bill of Elizabeth Adams that the son ever maintained either of his parents or undertook to support them.

After the death of David Elbert Adams, the defendant P. W. Lipscomb, father of Elizabeth Adams, qualified as administrator of his son-in-law's estate, and took over all the personal property of testator, except the money and bonds, paying to Ann Zilletta Adams the $300.00, as provided in the will, for which the latter receipted as executrix of G.

W. Adams, deceased. For some time the widow of testator and her daughter-in-law continued to live together on the home farm and to receive support therefrom as formerly. In April 1921, they entered into a written agreement which was to "stand for the season of 1921 or until changed by the parties," to lease the farm to one John T. Auvil "on the terms and conditions heretofore tentatively agreed with him."

This agreement set out the provisions of the will as to the management of the farm by David Elbert Adams and the aid to be rendered by him in working the same, and the death of the father and son; and further recited that certain questions had arisen as to the right of the administrator of David Elbert Adams to buy in the personal property mentioned in the will, and as to the right of Elizabeth Adams in her own right and as guardian of her infant daughter to comply with the provisions of the will as to the support of Ann Zilletta Adams so as to vest title to the home place in Frances Adams on the death of her grandmother. The contract further recited that Ann Zilletta Adams desired further time to consider more fully whether she would accept support from her daughter-in-law and granddaughter, and to determine more fully as to the rights of P. W. Lipscomb to exercise an option to take the personalty, but that both parties were anxious to have the farm tilled and the property cared for until all matters in controversy could be settled. The contract further provided that all profits from the farm not required for the support and maintenance of the parties thereto was to be divided equally between them. Nothing is contained in this contract to show an intention on the part of Ann Zilletta Adams to renounce the will; on the contrary, the preamble of the contract recited that "whereas George W. Adams died testate and by the provisions of his will devised his home farm in Tucker County, West Virginia, to said widow for her life time, and further provided that if his son David Elbert Adams remained with him on the farm and took business management of the farm, that he should have the said farm on the death of his mother, the said Ann Zilletta Adams." Whether the lease mentioned in this contract was executed or not does not appear; but Ann Zilletta Adams in her answer to the bill of Elizabeth Adams alleges that she and Elizabeth Adams did

live together and operate the farm under the said contract during the season of 1921, without an open breach, but that the arrangement was not satisfactory or profitable; and that at the end of the season she gave written notice to Elizabeth Adams that such arrangements were at an end, and that she would assume full control of her life estate referred to in said contract not later than January 1, 1922.

On January 17, 1922, Ann Zilletta Adams filed with the clerk of the county court an attempted renunciation of the will, by which she sought to elect to take such share of her late husband's estate, both real and personal, as she would have been entitled to had her husband died intestate.

Both suits were instituted about the same time, returnable to May rules, 1922. The first named suit was brought by Elizabeth Adams, in her own right and as guardian for Frances Adams, her infant daughter, the defendants being the widow of Geo. W. Adams, and his five remaining sons and daughters, and P. W. Lipscomb, administrator of the personal estate of David Elbert Adams, deceased. The second suit was brought by Ann Zilletta Adams, as executrix of the last will and testament of George W. Adams, deceased, and the defendants were all the others named in the first suit. No evidence was taken to support any of the pleadings. The causes were heard on the bills, answers, replications, and exhibits filed therewith; the latter being certified copies of the will and the widow's alleged renunciation thereof, the contract between Ann Zilletta Adams and Elizabeth Adams as to leasing the home farm, an account of the receipts and disbursements, rendered by Ann Zilletta Adams, as executrix of George W. Adams, deceased, showing a balance on hand amounting to about $4,500.00, and the record of an unlawful detainer case, commenced April 5, 1922, before a justice of the peace, by Ann Zilletta Adams against Elizabeth Adams for the possession of the mansion house and home place. In the unlawful detainer case the justice found for the plaintiff; and the defendant appealed to the circuit court, where the case was pending at the time of the trial of the suits here involved.

On the pleadings the circuit court found that George W. Adams died intestate as to the home place, consisting of the

69 acres, 46 acres, 44 acres, and .9 acres mentioned in the will, and that his heirs will take the same according to the statute of descent and distribution; that P. W. Lipscomb as administrator of the estate of David Elbert Adams, deceased, did not have the right to take the personal property turned over to him by the executrix, for the sum of $300.00, and directed that said executrix repay to him that sum, and that he account to her for the reasonable value of the property so taken and received by him; that the will in all the other provisions thereof stand valid; that such a case was presented that no aid could be given the court by extrinsic evidence in the construction of the will; that David Elbert Adams having died without having elected to take the 74½ acres at the price of $525.00, the same should be sold and the proceeds thereof divided among the heirs of the testator; and that the causes be referred to a commissioner for the purpose of settling the accounts of Ann Zilletta Adams and P. W. Lipscomb in their respective fiduciary capacities; and as to all other questions not specifically passed upon, the causes were continued.

The first question presented for our consideration is whether the lower court erred in holding that testator died intestate as to the home farm. It is the contention of appellant Elizabeth Adams that the will in controversy was in the nature of a contract between father and son, by which, for certain services to be rendered by the son, he was to have at the death of the father the real estate and personal property mentioned in the will, subject to the life estate of his mother in the home farm; that with knowledge of the contract the son remained on the farm with his father, entered upon and performed on his part all the services required of him, and complied with all the conditions of the will until the time of his death; and that by an occurrence not contemplated by the testator and beyond the control of either party, the son was prevented from further complying with the condition to maintain and support his mother. The answer of Ann Zilletta Adams denies that the son contributed to the maintenance and support of either herself or her husband; but the fact remains that the son did remain on the farm for a period of fourteen years after the making of the will,

and during all that time assisted his father in maintaining the family. The mother insists that the son was fully repaid for his services by receiving his share of the farm, profits, as provided by the contract in the will; but we must take the contract as a whole. The son, for his services, was not only to have the one-half of the profits from the farm, but also the home farm after the life estate devised to his mother. Can we not say that the provision giving the son one-half the profits from the farm was to enable him to live in the meantime as befitted one in his station in life? It would be unreasonable to expect him to labor all these years without receiving in the meantime one cent for his services and only in anticipation of the devise and bequest provided for in the will, which he could not enjoy until after the death of the father at the earliest. We have distinctly held that a contract to make a will is controlled by the same rules and principles and enforceable as other contracts. *Jefferson* v. *Simpson,* 83 W. Va. 274; *Davidson* v. *Davidson,* 72 W. Va. 747. Here the will itself is evidence of the contract, and fixes the compensation to be received by the son for his compliance with the terms thereof.

We think David Elbert Adams performed such services under the contract in the will as to constitute partial performance of the conditions therein; and that the further performance of the condition to support his mother became a condition subsequent. And the law seems to be well settled that where a condition subsequent becomes impossible of performance, title to the property devised becomes vested in the devisee upon the death of the testator. 28 R. C. L. 320, and notes; 17 Ann. Cas. 433, and the many cases cited therein. This is true where the condition is rendered impossible of performance by an act of God, as in this case. 28 R. C. L. *supra.* But the condition subsequent may render the estate subject to the burden of performance by way of a charge thereon to be executed by the court on the principles of *Marcum* v. *Marcum,* decided at this term. It would certainly be inequitable under the facts in this case to deprive the widow and daughter of David Elbert Adams of the devise manifestly intended by his father. A reading of the will discloses the fact that each of the testator's other son's and daughters was

provided for, either out of the real estate or out of the proceeds of that part of it directed to be sold. The only provision which seems to have been made for this son, after all his years of labor on the farm, was this devise of the home farm, the right to take the tangible personalty upon the payment of $300.00, and one-sixth of the other personal estate.

On the proposition that a condition in a will rendered impossible of performance, as in this case, will not defeat the vesting of the estate devised, see *Burdis* v. *Burdis,* 96 Va. 81; *Ellicott* v. *Ellicott,* (Md.) 48 L. R. A. 58; *Hammond* v. *Hammond,* 55 Md. 575; *Burnham* v. *Burnham,* 79 Wis. 557; Page on Wills, §675; 2 Jarman on Wills, (6th ed.), 1483; and the many cases cited in 28 R. C. L., *supra,* and 17 Ann. Cas., *supra.* For the reasons just assigned we are of opinion that the court erred in holding that testator died intestate as to the home farm, and that the decree complained of must necessarily be reversed on this ground.

On the second proposition disposed of by the circuit court, namely, that the administrator of the estate of David Elbert Adams did not have the right to take the personal property left by testator at the price of $300.00, we think the court was right. The language of the will is, "and at the time of my death he, my son David Elbert, is to have the privilege, or at his option, to take," etc. No title passed to the son by the will. He was only given the privilege of purchasing from the estate certain personal property at a price named. He is named as one of the distributees of the money testator might have at the time of his death, and the will provides that the sum to be paid by the son for the personal property named was to be distributed with his other money, equally among testator's six children. All the will gave the son was the right to elect whether he would take his one-sixth of all the personal property, or purchase a part of it and participate in the proceeds thereof along with his share of the remainder. This option was personal to him and did not descend to his heir or pass to his personal representative. "In case a person entitled to elect dies without having exercised the right, it is lost, and can not be exercised by his personal representative, unless the will expressly so provides." 40 Cyc. 1973, and cases cited. Here the will did not make any provision

for election by anyone other than the son. Where nothing passes or vests in the grantee election can not be made by his personal representative. 2 Williams on Executors and Administrators, (7th ed.), 1012. See also, Page on Wills, §719; 9 R. C. L. 604; 14 Id. 575. In *Rease* v. *Kittle,* 56 W. Va. 269, 279, this court held that an offer to sell land to a particular person, can be accepted and enforced by him alone and can not be assigned to a third party, because such a contract does not vest in the person to whom the offer is made any title to the land.

Upon the remand of the causes to the circuit court the question will necessarily arise as to the right of the widow of George W. Adams to renounce the will. The decree appealed from does not, directly at least, dispose of this question, and we ought not to conclude the parties in advance of the decision of the circuit court, but for the sake of economy in the proceeding, we venture to suggest the following: The record shows that the widow was likely one of the proponents of the will. She was named as executrix and qualified as such under the will. This act on her part standing alone would probably not estop her to renounce the will. 40 Cyc. 1979; Page on Wills, §721; *Whitbridge* v. *Parkhurst,* 20 Md. 62; *In re Gwin's Estate,* 77 Cal. 313; 9 R. C. L. 603; though it has been held that the mere fact of qualification as executor will estop one from claiming adversely to the will. *Bank* v. *Webster,* 44 N. H. 264; *Mendenhall* v. *Mendenhall,* 53 N. C. 287. In this case the widow did more. She not only remained in the mansion house, where she no doubt would have had the right to reside as doweress, but she entered into a contract with her daughter-in-law, the latter in her own right and as guardian of her infant daughter, by which they agreed to remain on the land as before the deaths of their husbands, and by which the land was to be leased to a tenant named therein, for the purpose of supporting the parties to the contract, and any profits left over was to be divided equally between the parties. The widow thereby elected to take under the will to that extent at least. She reaped a benefit in the way of support and maintenance at least for one season. Besides, before the end of the first season she gave notice to Elizabeth Adams that not

later than the first of January 1922, she would assume full control of her life estate referred to in the contract; and the life estate referred to in the contract was that devised to her by her husband in his will, as will be seen by reference to the contract. This notice is not exhibited in the cause, but in her answer to the bill of Elizabeth Adams the widow alleges the giving of this notice by her, and she is concluded by her answer. We think this conduct on her part concludes her from attempting to hold against the will as widow and not as devisee. 40 Cyc. 1980; 28 R. C. L. 331, and cases cited.

Another question which will be presented to the court below will be how to execute the contract of the deceased son David Elbert Adams for the further support and maintenance of the widow and life. tenant during the remainder of her natural life. This is a question which must first be determined by the lower court, and it would be improper for us to undertake to dispose of the question on this appeal. How and under what terms and conditions the contract shall be completed, is for the circuit court to determine. The interests of the widow and her comfort must be considered. The principles upon which this question should be determined are indicated, we think, in the recent decision in *Marcum* v. *Marcum, supra.*

The decree will be reversed in so far as it is in conflict herewith, and the cause remanded to the circuit court for further proceedings to be had therein in accordance with the principles herein enunciated.

*Reversed and remanded.*