ROBERT E. BARRINGER, INTERVENING DEFENDANT; FIRST NATIONAL BANK OF NEVADA, ADMINISTRATOR WITH THE WILL ANNEXED; AND CARLITA NANCY RAY, A MINOR DEFENDANT BY JEANNE S. HOUSSELS, GUARDIAN AD LITEM, APPELLANTS, v. IDA ANGELOT RAY, RESPONDENT.

No. 3902

June 14, 1956.                                    298 P.2d 933.

(Petition for rehearing denied July 12, 1956.)

*Hawkins & Cannon,* of Las Vegas, for Appellant Barringer.

*Ham & Ham,* of Las Vegas, for Appellant First National Bank of Nevada, Administrator C. T. A.

*Jeanne S. Houssels,* of Las Vegas, Guardian Ad Litem and attorney for Carlita Nancy Ray, a minor defendant.

*Harry E. Claiborne,* of Las Vegas, for Respondent.

**OPINION**

By the Court, BADT, J.:

The main question presented in this appeal is whether the respondent Ida Angelot Ray, as surviving wife of Carl Ray, deceased, was bound by her alleged election to take under the will of the testator to the end that she was estopped from seeking specific performance of an antenuptial agreement. The learned district judge rejected such defenses of election and estoppel in pais, and we agree with his conclusion. Certain other assignments of error are likewise disposed of in this opinion.

On April 19, 1946, an antenuptial agreement was entered into between the parties by which the husband agreed to make certain disposition of his property in favor of his wife upon his death. Following the marriage of the parties a will was executed by the husband which, upon his death, was admitted to probate upon application of the wife. Appellant Barringer, claiming as preterm itted heir of the decedent, successfully asserted his right to share in the estate. In Re Estate of Carl Ray (Petition of Barringer), 69 Nev. 204, 245 P.2d 990. The wife then brought this action to enforce the antenuptial agreement. Appellants contend that her actions in support of the will constituted an election to

take under the will and that she is precluded by that election from now asserting a right to the estate under the agreement.

The preamble of the antenuptial agreement of April 19, 1946 read in part as follows: "WHEREAS, a marriage is about to be solemnized between the parties hereto; and WHEREAS, in anticipation of such marriage said parties desire by an ante-nuptial agreement to fix and determine the rights of each of them in any and all property of every nature and description and wheresoever located, that either of them may own at the time of such marriage, or may acquire thereafter, and, particularly, to have the said first party agree to make, and make, and the second party to agree to accept, and accept, a pecuniary provision for the second party's benefit, in lieu and full discharge and satisfaction of any and all rights or claim of dower or any claims to community property, and of any and all other rights, claims or interest in or to any and all of the first party's property, whether real, personal or mixed, and wherever situated, that she may have as wife or widow, but for such provision and the execution and delivery of this agreement, and the full performance thereof by said first party, his heirs, executors, administrators or assigns, whether the foregoing rights, claims, titles and interest will or would inure to said second party by statute, common law, or otherwise; * * *."

The agreement recited that it was made in consideration of the foregoing and of the marriage about to be solemnized and of the subsequent terms and covenants set forth. Paragraph 1 of the first covenant read as follows: "1. That the first party shall make and keep in existence a valid will, wherein and whereby all of his property will be bequeathed to a trustee and said will shall provide that the second party shall receive one-half (½) of the net proceeds of said trust estate, upon the condition that the second party shall have lived with first party as his wife until the date of his death and during said time been a loyal, devoted wife to him."

Paragraph 3 provided that the foregoing provisions should be "in lieu and in bar of any and all right or claim of dower, in and to any and all of the lands, tenements and hereditaments of said second party, wheresoever the same may be located, or to which the second party might be or become entitled after consummation of her marriage to said first party, as wife or widow, and in lieu of any right which the second party might have to apply to the court for a family allowance or support money from the estate of the first party in the 'event of his death * * *, and also in lieu of any claim to any of the first party's property of whatsoever nature and wherever located."

Carl Ray thereafter executed a formal and carefully drawn will, the copy whereof appearing in the record occupies some 25 folios. Provision Fourth contains bequests aggregating $6,000. Provisions Fifth and Sixth contain further minor bequests.

Provision Seventh of the will gives, devises and bequeaths all of the rest, residue and remainder of Ray's estate, of every kind or nature and wherever situate, to three trustees, of whom respondent is one, for the uses, purposes, powers and trusts thereafter specified and containing a particular description of four separate parcels of real property, parcel three being in the State of Wyoming and parcel four being in the State of California. Under section 1 of provision Seventh one half of the net income (but not less than $500 a month) is payable monthly to the testator's widow for the entire term of the trust. Out of the other half of the income, $100 a month is payable to the testator's daughter Carlita Nancy Ray, $100 a month to the testator's nephew Truman Nye (a like $100 monthly payment to a boy intended to be adopted, which provision never became effective) and, at the end of each calendar year, if there be additional net income undistributed, and in the discretion of the trustees, one half thereof to the surviving wife and one half to the daughter (alternate provisions for a portion to go to the boy, if adopted, not coming into being, as

there was no such adopted son). The testator declared the primary purpose of the trust to be "to provide for my said wife and adopted child or children." Alternate provisions were made in the event of the death of the testator's wife and in the event of the death of the testator's daughter. The term of the trust is declared to be twenty years, with instructions for maintaining intact certain of the parcels of real property.

Provision Eighth of the will provides for distribution of the corpus and accumulations, on termination of the trust, one half to the wife and one half to the daughter (alternate provision for the adopted son never becoming effective).

Provision Tenth bequeaths $1 only, in place of all other bequests, devises and interests to any devisee, legatee, beneficiary or other person who would be entitled to share in the estate who directly or indirectly contests the will or seeks to impair or invalidate any of its provisions or who conspires or cooperates with any person attempting such things or who settles or compromises in or out of court with any such contestant or who fails to oppose such proceedings or endeavors to succeed to any part of the estate otherwise than through the will. Provision Thirteenth appoints the wife Ida Angelot Ray and Paul Angelillo executors. Provision Fifteenth requires the executors to defend any contest to the probate of the will.

On petition of the named executors, appellant being one, the will was admitted to probate in Nevada, California and Wyoming. The estate in Wyoming was closed by distribution to the trustees for the purposes mentioned in the trust. The California estate was likewise administered under the provisions of the will.

Counsel for the respective appellants filed separate briefs and orally argued the case on behalf of the respective appellants. Their most seriously urged assignment of error is that the respondent, in accepting the benefits of the will and in electing to take thereunder, is estopped from seeking specific performance of the antenuptial

contract. We might say, as did the court in Willard v. Shekell, 236 Mich. 197, 210 N.W. 260: "Counsel have furnished a wealth of authorities * * * dealing with the question of election of remedies, all of which have been examined, but as we have reached the conclusion that the remedies pursued, or attempted to be pursued, were not inconsistent, it will not be necessary to discuss all or any considerable number of them." We note in the margin the main cases upon which appellants rely.[1]

Some of these authorities so aptly state the rule that we quote some of the expressions used. Thus in Sackett v. Farmers' State Bank, cited below [209 Iowa 487, 228 N.W. 52] the court adopted the following language from Elm Creek Elevator Company v. U. P. Railway Company, 97 Iowa 719, 66 N.W. 1059, 1061, 59 Am.St.Rep. 434: " 'A man may not take two contradictory positions, and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge, or means of knowledge, of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again.' " It then emphasized: "The doctrine of election of remedies has application only to *inconsistent* remedies." And in Burns v. First National Bank of Joliet, 304 Ill. 292, 136 N.E. 695, 696, the court thus expressed the rule: "Election under a will consists in the exercise of choice offered a devisee or legatee of either accepting what is given by

[1]Towle v. Towle, 79 Wis. 596, 48 N.W. 800; Alerding v. Allison, 31 Ind.App. 397, 68 N.E. 185; Crawford v. Briant, 10 Cir., 53 F.2d 754; Sackett v. Farmers' State Bank, 209 Iowa 487, 228 N.W. 51; Noyes v. Noyes, 233 Mass. 55, 123 N.E. 395; Hardeman v. Ellis, 162 Ga. 664, 135 S.E. 195; West v. West, 131 Miss. 880, 95 So. 739, 29 A.L.R. 226; Ross v. First Presbyterian Church, 272 Mo. 96, 197 S.W. 561; Lynch v. Jones, 247 S.W. 123; Appeal of Baker's Estate, 170 Okl. 595, 41 P.2d 640; In re Melot's Estate, 231 Pa. 520, 80 A. 1051; Adams v. Adams, 95 W. Va. 187, 120 S.E. 590; also 4 Page on Wills 40–50, Sec. 1366; 57 Am.Jur. 168, Wills, Sec. 191; Anno. 69 A.L.R. 103; Anno. 106 A.L.R. 755.

the will and surrendering some claim or right or property which the will undertakes to dispose of, or retaining such claim, right, or property and rejecting the provision made by the will. If there is such a claim inconsistent with the provision of a will, the testator does not intend that the beneficiary shall enjoy both the right or property claimed and what is given by the will. His intention being that all the provisions of the will shall take effect, a beneficiary cannot accept that which is given by the will, and set up any right or claim, however legal or well founded it may have been, which would defeat or prevent a full operation of the will."

In these cases the need for an election was at once apparent. There was no question but that the two courses of action which were available were inconsistent and that a choice between them must be made.

In the case at bar the need for election was not apparent. The provisions of the will did not appear inconsistent with the provisions of the written agreement except with respect to certain cash bequests which we may consider minor in their proportion to the entire estate. We may concede that the plaintiff waived any objection to these bequests and that would be an end to that phase of the matter. The will had been executed not as a substitute for the provisions of the agreement but in an attempt to comply with it. On its face it did appear to carry out the terms of the written agreement, namely, to create a trust in one half of the benefits whereof plaintiff would be the beneficiary. Any acceptance by plaintiff of the agreement, thus carried out in the will, resulted in no inconsistency with a similar claim under the will itself. Thus in that part of the estate administered in California and as to that part administered in Wyoming, distribution under the will was substantially the same as if plaintiff's claim had been satisfied under the agreement. In those two states the situation was in no way disturbed by any statute or rule of law whereunder Barringer would take one third of the estate as a pretermitted heir. In Nevada,

however, before it could be known that the two in the eyes of Nevada law were inconsistent and that an election between them must, therefore, be made, an authoritative determination upon a disputed point of law had first to be made. It was not until such determination was made that the fact of inconsistency and the consequent need for election were established.

In In Re Estate of Carl Ray (Petition of Barringer), 69 Nev. 204, 245 P.2d 990, in discussing the questions (1) whether the will did "provide" for Barringer, and (2) whether, if not, such omission was intentional, 9919 N.C.L. 1929, we mentioned the state of confusion of the authorities, the lack of consistency in the lines of distinction attempted to be drawn by the courts, the undoubted frequent frustration of the testamentary intent through application of the statute. Under these conditions, to hold that respondent must have made an election upon notice of Barringer's claim as a pretermitted heir would credit her with knowledge of a conclusion which this court reached only after much study and research.

Appellant contends that under the holding of this court in Robertson v. Robertson, this does not affect the situation and calls our attention to the language there used: "The conclusiveness of her election does not depend upon the chances of success that may attend her suit, but upon the fact that she has resorted to a remedy which is inconsistent with the one she now seeks to maintain, and has made such election with full knowledge of the facts in each case." Robertson v. Robertson, 43 Nev. 50, 59, 180 P. 122, 124, 187 P. 929. The language quoted undoubtedly expressed the proper rule with respect to the facts in that case.

Once the need for election is apparent or established the elector may be said to choose his course at his peril and to be irrevocably committed to all legal consequences which might subsequently be determined to attach. To require one to decide at his peril whether an election

must or need not be made in the face of a dispute upon the very point would be to extend the rule for election of the Robertson case beyond its obvious purpose and convert it into an unnecessary trap.

As to plaintiff's asserted election by reason of her obtaining and accepting a family allowance of $500 a month, it is a complete answer to note that such family allowance was paid to her under the provisions of the Nevada statute and without any provision to such effect under the will. Her petition for and acceptance of such family allowance, contrary to her written contract with the testator to accept the provisions of the will in lieu, among other things, of any claim to family allowance may indeed be a violation of her contract, but can under no possible conception be characterized as a taking under the will. The will contained no such provision. It is stated that the probate court has authorized the trustees to institute an action to recover these payments for the trust estate and we need not anticipate the result of such proceeding.

It is our conclusion that neither her seeking and accepting distribution of the California and Wyoming estate nor her seeking probate of the will in Nevada, nor her opposition to the Barringer petition, nor her accepting family allowance payments in Nevada was a rejection of the contract or an election to take under the will inconsistently with her rights under the contract. In other words, in California and Wyoming the will successfully implemented the contract, and the family allowance received by plaintiff was not the result of any provision in the will and was no election to take under the will.

Appellant assigns as error the court's ruling in permitting respondent to testify to the signature of herself and the decedent on the agreement in question. Such

assignment is based on the dead man's rule, Secs. 8966, 8970, N.C.L. 1929. She identified the signature of the decedent as his signature. Appellant contends that her testimony, unobjectionable if simply given as her opinion, was objectionable because stated as a fact, which the decedent, if alive, might have contradicted. We need not argue this distinction. This court held in Hough v. Reserve Gold Mining Co., 55 Nev. 375, 35 P.2d 742, that such testimony was not in violation of the statute. Accordingly, there was no error in overruling the objection. Other errors assigned have been considered and found to be without merit.

The judgment is affirmed with costs to respondent.

MERRILL, C. J., and EATHER, J., concur.