W. S. Kisor et al., Appellees, v. Harry Smith Litzenberg et al.,
Appellants.

Harry Smith Litzenberg, Appellant, v. W. S. Kisor et al.,
Appellees.

**WILLS: Contracts to Devise—General Principles.** Principle reaffirmed that a parol contract on due consideration to devise or leave property to another, if shown by clear and convincing testimony, is enforcible, especially when the contract is corroborated by declarations of the alleged grantor against his own interest, and when the equities are strongly in favor of the alleged grantee. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 23 et seq.)

**CONTRACTS: Acceptance—Conclusive Presumption.** It must be presumed that an advantageous contract, entered into by an uncle for and on behalf of his motherless and paternally abandoned infant nephew and niece, has been accepted by the beneficiaries, when for some 40 years they have been fulfilling their part of the contract.

**CONTRACTS: Consideration—Adequacy of Executed Consideration.** The court will not pass upon the adequacy of a fully executed consideration. (See Book of Anno., Vol. 1, Sec. 9441.)

**ACTIONS: Grounds—Dual Grounds for Quieting Title.** A party in an action to quiet title may rely both on a will and on an executed oral contract for the land.

**CONTRACTS: Construction—Ownership of Property.** A contract which provides, in effect, that a child shall become owner of all the property possessed by its foster parents at the time of their death is necessarily not confined to the property possessed by the foster parents at the time the contract was entered into.

**WILLS: Contracts to Devise—Survivor of Dual Beneficiaries.** An executed contract which provides, in effect, that two infant children shall enter the home of foster parents and there remain as though they were the natural-born children of such parents, and in return shall become the owners of the property of such parents at the death of the latter, casts upon the survivor of said beneficiaries the entire property, in case one beneficiary dies prior to the death of the foster parents.

**WILLS: Contracts to Devise—Abandonment—Presumption.** The abandonment of a contract which is, in effect, a contract to devise property, and which is highly advantageous to the party who is alleged to have done the abandonment, must be established by very clear and cogent testimony.

Headnote 1: 40 Cyc. pp. 1063, 1064, 1065, 1072. Headnote 2: 22 C. J. p. 109 (Anno.) Headnote 3: 13 C. J. p. 365. Headnote 4: 32 Cyc. p. 1328. Headnote 5: 40 Cyc. p. 1067. Headnote 6: 40 Cyc. p. 1066. Headnote 7: 40 Cyc. p. 1068.

Headnote 1: 28 R. C. L. 64. Headnote 3: 6 R. C. L. 678.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

FEBRUARY 15, 1927.

REHEARING DENIED JULY 1, 1927.

. Appeal from a decree in equity, quieting title to certain lands and determining rights in certain personal property, upon the petition of the plaintiffs and the cross-petition of the defendants in two different causes of action, consolidated for the purpose of this appeal. The plaintiffs in one case are the defendants in the other. From the decree the defendants in the first case and the plaintiffs in the second case appeal.—*Affirmed in part; reversed in part.*

*Thomas J. Bray* and *C. C. Orvis,* for appellants.

*McCoy & McCoy* and *A. J. Walsmith,* for appellees.

DE GRAFF, J.—In the year 1877, F. V. Litzenberg and his wife, Melissa C., were childless, and had no expectation of being blessed with children of their own. At that time, Harry Smith
1. WILLS: contracts to devise: general principles. and his twin sister Anna were about one and one-half years old, and may be viewed as orphans, since their mother was dead, and the whereabouts of their father, if living, were unknown. The custody of the children was then in J. G. Cordner, an uncle. Litzenberg and his wife took possession of the children under an alleged oral agreement with Cordner. Litzenberg died testate May 10, 1896. The twin sister, Anna, died in 1900. Mrs. Litzenberg died intestate November 16, 1924.

It is the claim of Harry Smith Litzenberg that, at the time Mr. and Mrs. Litzenberg took him and his twin sister, Anna, to raise as their own children, Litzenberg and his wife entered into a contract with the uncle, on behalf and for the benefit of the

twins, that, if the uncle would deliver to the Litzenbergs the custody and control of the twins, and the twins would live with them until the twins reached maturity, the Litzenbergs would so arrange their property and property rights that, at the decease of both of the Litzenbergs, the twins should have all the property owned by the Litzenbergs. On the 27th day of December, 1895, F. V. Litzenberg duly executed the following will:

"In the name of God, Amen.

"I, F. V. Litzenberg, of Union Township, Mahaska County, Iowa, at the age of fifty-one and being of sound mind and memory, do make and publish and declare this my last will and testament, in manner following,—that is to say.

"First. I give the bequeath to my wife, Melissa C. Litzenberg, all that tract or parcel of land situate and described as follows: N. W. Qr. of Sec. (13) Thirteen, T. P. (77) Seventy-seven, R. (15) Fifteen West, containing one hundred and sixty acres, together with all the hereditaments and appurtenances thereunto belonging or in any wise appertaining to have and to hold the premises above described during her life. At her death, the entire property to go and be divided equally between Harry Ray Smith and Anna May Smith, if both are living. If either is dead, then to his or her child or children if living, as the case may be. If no children, then the entire property to go to the living heir, Harry Ray Smith or Anna May Smith, as the case may be, or should both Harry Ray Smith and Anna May Smith both be dead and having left no children at the time of the death of Melissa C. Litzenberg, then all of the above described property to go and be equally divided between the living brothers of F. V. Litzenberg and Melissa Litzenberg.

"Second. I give and devise to Harry Ray Smith and Anna May Smith, their heirs and assigns, all that tract or parcel of land situated and described as follows, E. (½) one-half of S. W. Qr. of Sec. (12) Twelve T. P. (77) Seventy-seven R. (15) Fifteen, West containing 80 acres together with all the hereditaments and appurtenances thereto belonging or in any wise appertaining to have and to hold the premises above described to the said Harry Ray Smith and Anna May Smith, their heirs and assigns forever.

"Lastly I give and bequeath all the rest, residue and re-

mainder of my personal estate goods and chattels of what nature or kind so ever to my wife, Melissa C. Litzenberg, whom I hereby appoint sole executrix without bond of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof, I have hereunto set my hand and seal this twenty-seventh day of December, in the year of our Lord one thousand eight hundred and ninety-five.

"F. V. Litzenberg."

The testator died about six months after the making of this will, which was duly admitted to probate September 29, 1896. After Anna died, Harry and the widow continued to live together, with the exception of a few years, until her death, in 1924.

Harry Smith claims title to all of the property of the Litzenbergs under and by virtue of the contract. The caption of this appeal indicates that two causes of action are involved, both of which relate to the same contract, but not to the same property. The first cause, known as the Kisor case, pertains only to the real estate owned by F. V. Litzenberg at the time of his death. The second cause, known as the Litzenberg case, pertains to certain personal property which Melissa had accumulated during her lifetime, and to a 40- and a 20-acre tract of land which Melissa C. Litzenberg, the wife of F. V. Litzenberg, inherited from her father, and also to a house and lot in New Sharon, Iowa, which she had conveyed to her sister, Nancy Bond, one of the defendants.

In the Kisor case, the plaintiffs are the heirs at law of Melissa C. Litzenberg, and E. W. Goddard, the administrator of C. M. Kisor, deceased, brother of Melissa C. In the Litzenberg case, the plaintiffs and appellants are Harry Smith Litzenberg and his wife, and the defendants are the named plaintiffs in the Kisor case.

The record contains no findings of fact or conclusions of law made by the trial court, and we are, therefore, free to follow our independent reasons in determining, in so far as is necessary, the questions presented on this appeal. We have examined the evidence with particular care, and have reached the conclusion that the pleaded oral contract under which Harry Smith Litzenberg claims was, in truth and in fact, made and entered

into by and between F. V. Litzenberg and his wife, on the one side, and the uncle of the twins, on the other side, for the benefit and on behalf of the twins. The testimony of the uncle, J. G. Cordner, viewed in the light of the wording of the will of F. V. Litzenberg and several statements made by Melissa C., the wife, that the property would be Harry's, some day, admit no other construction or conclusion. In the determination of the other and related matters presented on this appeal we shall, therefore, consider it as proved that an oral contract was entered into, whereby the Litzenbergs agreed that, if the twins were placed in their hands, and they were permitted to rear them as their own children, they would leave to them everything they possessed, when they were through with it,—that is, upon their death.

We recognize the rule applicable to contracts of this character, that the proof, when resting in parol, must be clear, satisfactory, and convincing. *Ross v. Ross,* 148 Iowa 729; *Holmes v. Connable,* 111 Iowa 298; *In re Estate of Rich,* 199 Iowa 902.

We also recognize that an agreement to give or leave property to another, based upon a consideration, is a valid and enforcible contract. *Mueller v. Batcheler,* 131 Iowa 650; *Stiles v. Breed,* 151 Iowa 86; *Horner v. Maxwell,* 171 Iowa 660; *Stewart v. Todd,* 190 Iowa 283; *Garman v. Wettengel,* 199 Iowa 1150.

The rule is also recognized that, in an action against an estate under a contract with the deceased to will or deed property, declarations by the deceased to the effect that his property was for the claimant, after promisor's death, and that he expected him to have it, are admissible as against interest. *Thompson v. Romack,* 174 Iowa 155.

A court also takes into consideration the substantial equity or want thereof of the claim of the plaintiff as an influential consideration, and, where the equities are strong in favor of the plaintiff, they amount to corroboration of the direct testimony in support of the claimed contract. *Garman v. Wettengel,* supra.

The real and determinative question at issue is one of fact, and, in the last analysis, the weight to be given the testimony rests, as Greenleaf said, "upon our faith in human testimony, as sanctioned by experience." Courts are human institutions, and testimony is weighed in the light of experience.

The contention of the appellees is that the offered proof

does not sustain the alleged contract, and it is urged that the evidence tendered by the appellant is not natural, reasonable, or corroborated. We cannot adopt this viewpoint. The evidence is conclusive that the twins adopted the contract in controversy and performed their part of the contract. That is to say, they lived with the Litzenbergs,—Anna until her death, and Harry until after he had attained his majority; and he continued to live with the widow until she died, with the exception of a few scattering years, after Harry married. The contract, however, .was substantially performed by the twins.

No purpose is served in attempting to quote from a voluminous record, much of which is immaterial and incompetent. It will suffice to declare our finding that the oral contract was, in fact, entered into and substantially performed by the twins.

The defendant-heirs of Melissa C. Litzenberg rely on several propositions for an affirmance. It is claimed that, upon the death of Litzenberg, his widow became the owner of one third of the estate, by reason of the admeasurement of her distributive share, and further, that appellees' claim of adverse possession is sustained by the evidence. Other claims are assigned by the heirs as corollaries of these two propositions.

If it is conceded that the widow of F. V. Litzenberg became seized in fee simple of one third of her husband's estate by the admeasurement of dower, she held it until her death, at which time the rights of the appellant attached, under the contract.

It is the claim of the heirs that statements of an intent to give property by will to another do not amount to a contract to do so. That may be admitted as the established rule; but in the instant case it is to be remembered that the evidence is that the Litzenbergs said to Cordner, in the original arrangement, that, if the twins were left with them, to rear as their own, "everything we have got will be made theirs,—just the same as if we had adopted them; or if we don't adopt them, if they stay with us until they are grown, and treat us as children treat parents, they should be treated as our children."

This language means simply that, if the twins were left with the Litzenbergs, to rear and educate as their own, and the twins performed their part in the home, as might be expected had the twins been their own children, the Litzenbergs would, upon their

death, leave their property to the twins. As pointed out, Litzenberg fulfilled this agreement, and fully performed.

It is contended and argued that the uncle had no authority to enter into the alleged contract. We may assume, for the purpose of this case, that the uncle did not have any formal author-

2. CONTRACTS: ac- ity to do what he did do. It may be conceded
ceptance: con-
clusive pre- that he had no express authority to bind the
sumption. father of the twins to the contract, in so far as
it took away from the father, if living, the custody and control of the twins. That question is not presented for our consideration. The twins were, in fact, delivered to the Litzenbergs and reared by the Litzenbergs, and the husband fully performed his part of the contract, by the making of the will in the manner in which he did make it.

In *Stewart v. Todd,* 190 Iowa 283, referring to *Carmichael v. Carmichael,* 72 Mich. 76 (40 N. W. 173), it is said:

"In this case, it is held that, where a husband and wife bind themselves to make a particular disposition of their property by will, and such contract is fully performed on the part of the husband, and the benefits received and accepted by the wife, equity will prevent the wife from violating her part of the contract in fraud of parties interested; and that, if a conveyance is made by her, after the death of her husband, in violation of her agreement, the conveyance may be set aside, at the suit of the parties for whose benefit the agreement was made."

It appears from the evidence in the case at bar that the elder Litzenberg recognized the agreement he had made for the benefit of the twins, and made his will accordingly, and that the widow recognized the contract in many conversations during her lifetime. True, we are not dealing with an attempted adoption. We are recognizing on the part of the child a performance of an agreement made on its behalf. See *Chehak v. Battles,* 133 Iowa 107 (note in 12 Ann. Cas. 144). The pleaded rights of Harry Smith Litzenberg are not predicated on inheritance by virtue of an attempted adoption. We recognize that rights to property may be acquired under contractual provisions of a writing that falls short of a statutory instrument of adoption, and even under a parol contract, clearly established, where there has been performance of the undertaking. *Morris v. Trotter,* 202 Iowa 232.

The Litzenbergs actually got all they bargained for, and

this furnishes a sufficient consideration to support their prom-
ises, as effectually as if the agreement had been in writing, con-
stituting an original binding obligation on them.
The adequacy of consideration is for the parties
to consider at the time of making the agreement,
and not for this court, when it is sought to be
enforced. Harry Smith Litzenberg was to receive or have a
child's share of the estate of the Litzenbergs at the time of their
death. Harry has performed his part of this contract, and the
elder Litzenberg has performed his part thereof. Equity will
not permit heirs of the widow to deny the fulfillment of the
contract. Although a contract is invalid as a contract of adop-
tion, it is good and sufficient as a contract to leave a plaintiff a
child's share of the estate upon the death of the ancestor. A
court of equity will specifically enforce a promise to leave to ·
another the whole or a definite portion of one's estate as an
award for personal services rendered or other acts done by the
promisee which are not susceptible of a money valuation, and
were not intended to be paid for in money. See *Baker v. Sy-
fritt*, 147 Iowa 49. It is no objection to the enforcement of such
a contract that it was entered into with a third party for the
promisee's benefit, if the latter has acted under it and executed
it. See *Burns v. Smith*, 21 Mont. 251 (69 Am. St. 653).

The life of the Litzenberg family was lived with reference to
the twins from the time they were taken into the family until
the death of the Litzenbergs. To deny at this time the claimed
rights of the appellant would be a deception and a fraud which
equity cannot countenance for a moment. The reward cannot be
viewed as all on one side. The twins took the place of children
in the family, and under a specific agreement they performed.
This is a cold fact which the law regards as a sufficient consid-
eration to support the contract.

We will not speculate how much the twins added to the
happiness of the Litzenberg family, nor does the law undertake
to estimate values of this character. What the lives of the Litz-
enbergs would have been if they had been left to follow the
channel that nature had provided, is of no concern at this time.
The twins were taken possession of, mind and body, and moulded
as the foster parents desired. The twins were as buds that had
been cut from the natural stem and grafted upon a foreign tree,

3. CONTRACTS:
consideration:
adequacy of
executed con-
sideration.

but they grew into that family and became a part of its very life. Everything that a valid and legal adoption could have contemplated was accomplished. There was a contract. Its terms were fully performed, and no statute at this time operates to the injury of the appellants.

It is claimed by the heirs that the alleged contract is not mutual, and is uncertain and indefinite. It is undoubtedly true that the contract, standing alone, and without the facts relating to its interpretation and performance by the parties themselves in the forty some odd years since its inception, might appear indefinite and uncertain; but under no circumstances may it be said to lack mutuality. The twins did all that they were required to do under the contract, and the interpretation which the parties have placed on the contract discloses with sufficient certainty what its terms were, so that the rights of all the parties therein may be definitely determined. In cases of this character, it is neither usual nor does it promote justice to consider the mere wording of the contract, be it oral or written, when there is a record of more than forty years of activities on the part of those interested, bearing upon the contract and its meaning.

It is claimed that the appellant, having accepted the provisions of the will, is now estopped from claiming under his oral contract. This claim is not well based. The elements of estoppel have not been shown to exist. There is no showing that Harry Smith Litzenberg did or failed to do, said or failed to say, anything that he should or should not have done, or should or should not have said, which caused anybody to act to his damage. He had a right to bring forth in a single suit all of the grounds he has upon which to base his claim of ownership and right to quiet title in him. See *Merrifield v. Clark*, 199 Iowa 171; *Des Moines & Ft. D. R. Co. v. Bullard*, 89 Iowa 749. It is only when the plaintiff brings his action to quiet title on one ground and decree is entered against him, that he is estopped from bringing a like action relative to the same property on some other ground thereafter.

4. ACTIONS: grounds: dual grounds for quieting title.

It is claimed that the oral contract is barred by the statute of limitations. This proposition is not argued, nor are any cases cited to support it. It is likewise untenable. The statute did not begin to run against the action until at least the death of

Melissa C. Litzenberg, and the records show that within a very short time thereafter, Harry began this action.

It is also claimed that the contract does not include property acquired by Melissa after the pleaded contract was made, to wit, October, 1877. It is the theory of the heirs that, if the contract was made, as alleged, it included only such property as was owned by Mr. and Mrs. Litzenberg at the time of its making. The case of *Hart v. Hart*, 181 Iowa 527, is cited to support this contention. It is true that we therein said:

5. CONTRACTS: construction: ownership of property.

"Moreover, he then owned but a few acres of the land in controversy, and the word 'everything' can hardly be construed to include all property he might acquire within the next 35 years."

The *Hart* case was one wherein an action was brought to set aside a conveyance of certain lands and to settle title thereto in one Mary Elizabeth Hart, niece of one Nicholas Simpson, who died intestate. She had come to his home after being an inhabitant of the poorhouse in Ohio, and, although never married, had a daughter, who was reared by others. She kept house for Simpson from the time of her arrival until his death, and cared for his mother during the first ten years. We held the evidence to be insufficient to establish a contract alleged to have been made between them to the effect that, if she would perform the services of a housekeeper and aid him in taking care of his mother, she should become a joint owner of all the land which he owned or should afterwards acquire, and that, if she survived him, she should become the absolute owner of all the land which he owned or afterwards might acquire.

Taking the case by the four corners, and determining it from all the facts in the record, we can arrive at no other conclusion than that the Litzenbergs, being childless, intended to give these twins such property as they possessed at the time of their death.

It is said that, Anna having died before Melissa, her twin brother Harry is not entitled to recover her alleged interest in the estate. Anna left no heir except Harry, so far as is disclosed by the record. It was manifestly the intention to leave this property to both of the twins, and this intention was expressed in the

6. WILLS: contracts to devise: survivor of dual beneficiaries.

will of Mr. Litzenberg. When Anna died, all of her rights in the contract passed to Harry. It could not reasonably be said that the intent of these parties was that, in case one of the twins died, the half which would have gone to that one should be *in nubibus* until the death of both the Litzenbergs.

It further appears that, before the death of Melissa C. Litzenberg, she executed and delivered to Nancy Bond, her sister, a warranty deed to certain property which the said Nancy Bond now claims by virtue of said deed. It appears that this deed was executed on June 29, 1923, and filed for record on June 26, 1924, and conveyed Lots 3 and 4, Block 7, in Winder's Addition to the town of New Sharon, Mahaska County, Iowa. Melissa Litzenberg died November 16, 1924.

We will not disturb this conveyance. The pleaded contract does not involve a restraint on alienation. It did contemplate that what the Litzenbergs had at the time of their death should become the property of the twins, under the conditions heretofore stated.

Lastly, it is claimed by the heirs of Melissa Litzenberg that the twins repudiated, rescinded, and abandoned the contract which the uncle had made with the Litzenbergs for the benefit of the twins. To find and determine that the twins repudiated, rescinded, and abandoned the contract when they attained their majority, which contract gave them, without the necessity of further effort on their part, valuable real and personal property, would require the clearest and most cogent testimony, since it would be contrary to the habits of all mankind. The record may be searched in vain to find any evidence of a convincing and probative character to establish any intent on the part of either of the twins or of Melissa C. Litzenberg to rescind, repudiate, or abandon the pleaded contract. The evidence is to the contrary.

7. WILLS: contracts to devise: abandonment: presumption.

We recognize that this is an unusual case; but, upon a careful consideration of the record and of the applicable legal principles, the decree entered by the trial court must be reversed, with the one exception noted, and the cause remanded, with direction to enter a decree in harmony with this opinion.—In part *affirmed*; in part *reversed*.

All the justices concur.