1 So.2d 303

### WAGAR v. MARSHBURN.

#### I Div. 128.

Supreme Court of Alabama.

March 27, 1941.

Harry T. Smith & Caffey, of Mobile, for appellant.

Webb & Shepard and McCorvey, McLeod, Turner & Rogers, all of Mobile, for appellee.

FOSTER, Justice.

The chief question in this case is dependent upon the interpretation and effect of a written instrument dated September 11, 1919, executed by Fred L. Wagar and his two children, Portia W. Wagar (now Marshburn), and H. R. Wagar, Jr., which instrument is as follows:

"2819 P St., N. W.,
"Washington, D. C.
"September 11, 1919.

"I, F. L. Wagar, do not claim any interest in the estate of Nanta W. Wagar, and any claims I could have in law or equity or otherwise are hereby relinquished and set over and assigned to H. R. Wagar, Jr., and Portia W. Wagar, equally. I, F. L. Wagar, also release any interest in the property of 12th and Eye [I] Sts., N.W., of Washington, D. C. Numbers 900, 902 and 904 on 12th St., and Numbers 1201 and 1203 on Eye [I] St., inclusive, and I also release any claims or equity I have in the Colonial Apartments and the Annex in the city of Alexandria, Va.

"I, Portia W. Wagar and I, H. R. Wagar, Jr., jointly and separately guarantee to pay F. L. Wagar, during his lifetime, $2500. from the estate of Nanta W. Wagar and $2500. from the estate of H. R. Wagar, Sr., annually for looking after, advising and managing the aforesaid estates.

"In consideration of same, I, F. L. Wagar, hereby will and bequeath to Portia W. Wagar and H. R. Wagar, Jr., equally an undivided two-thirds (⅔) interest in all my personal property and all my real estate.

"Fred L. Wagar.

"H. L. Rust ⎱ Witness as to
"A. Elizabeth Oliphant ⎰ F. L. Wagar

Portia W. Wagar.
"H. L. Rust ⎱ Witness as to
"A. Elizabeth Oliphant ⎰ Portia W. Wagar

H. R. Wagar, Jr.
"H. L. Rust ⎱ Witness as to
"A. Elizabeth Oliphant ⎰ H. R. Wagar, Jr.

"District of Columbia, to-wit:

"On this 12th day of September, 1919, before the undersigned a notary public in and for the District aforesaid, personally appeared Fred L. Wagar, Portia W. Wagar and H. R. Wagar, Jr., whose names are signed to the with [in] instrument, all of whom are personally well known to me, and known to me to be the persons who executed the same, in said District and did each after being informed of the contents thereof, acknowledge the same to be their free and voluntary act and deed, as of the date on which the same bears date.

"Given under my hand and seal this 12th day of September, 1919.

"Geo. Calvert Bowie,
"Notary Public, D. C.
My commission expires
Sept. 16, 1923."
"(Notarial Seal)

Fred L. Wagar died and left a widow, Elizabeth Wagar, who is not the mother of either of his children, and also left a last will and testament, which was probated in Mobile County, Alabama, September 10, 1935. In it he appoints his widow executrix and trustee of his estate, which he seemed to think was quite extensive. The trustee was directed to take, manage and control all his property, with quite full power of disposition; and to distribute one-half of the net income from his property equally among his widow and said two children, and retain one-half undistributed. The trust was to continue for a period extending ten years after the death of the widow. It also provided for her successor as trustee, and that she or her successor shall receive compensation in the sum of $5,000 a year, and necessary expenses incurred in performing the trust.

The court held that the instrument of September 11, 1919, was based on a valuable consideration and served to pass to Portia Wagar, and her brother H. R. Wagar, Jr., all the interest of Fred L. Wagar in the property of which their mother was seized at her death, and also that each of them was entitled to an undivided one-third interest in all the other property owned by him on September 11, 1919, free from any claims by reason of the administration of the estate of Fred L. Wagar, deceased. The court ordered a reference to determine what properties and their values were owned by him on said date, and other matters proper to adjust the respective interests of the parties. Elizabeth Wagar individually and as executrix prosecutes this appeal.

The principles which control the interpretation and effect of the instrument have been stated by this Court in several cases in harmony with authorities generally.

Parties sui juris may contract as they wish in respect to their property, within legal limits. The law in recent times does not dwell on the form in which they may express themselves. The purpose of the courts in that connection is to find out what is the intention of the parties, as so expressed, according to well known principles to guide in that respect, and then to enforce it as so interpreted. They may make contracts to pass an immediate right of enjoyment or to postpone it to some future date, such as the death of the grantor. When that right is thus postponed, it may be done by a contract so stipulating, or by a contract to make a will to that effect, or even by making such a will, all supported by sufficient consideration and in the manner required by law. It may be verbal or in writing dependent upon statutory requirements. It may presently pass the legal title by a deed with a reservation of enjoyment during the life of the grantor. It may be an executory contract agreeing to grant certain specified property effective at his death, measured

by the general rules pertaining to executory contracts. It may be in substance an executory contract to devise and bequeath by a will certain specified property, or a certain amount of money in the nature of a general legacy, or all of his property and effects. The contract to do so may be expressed by executing the will, of course on a valuable consideration, or it may be in form an agreement to do so. A will is on its face, and, as such, revocable. An agreement to make a will expressed by doing so, and then revoking it is like the repudiation of an executory contract in other forms. It is an executory contract, and is not fully performed until he dies leaving a will duly executed as he had agreed. If it relates to certain specified property existing and described as of the date of the contract, it creates a present equitable interest in that property which can be enforced as other such rights after the death of the maker. If it relates to such property as the grantor may have at his death it leaves him more freedom to dispose of it as he sees fit in his life, and to sell or exchange it. And it will fasten itself on such as he might have at the time of his death. If it relates to a general legacy or annuity, it does not pass any certain item of property or specific lien but its effect is to cause his heirs, distributees, legatees and personal representatives, as the case may be, to stand charged with a duty to pay it out of the assets of the estate generally. It thereby creates a trust on his descendable property. Hendrix v. Pigue, 237 Ala. 49, 185 So. 390; Turley v. Hazelwood, 234 Ala. 186, 174 So. 616; 68 Corpus Juris 568, 569, 570, 571, 572, 573, 574; Bolman v. Overall, 80 Ala. 451, 2 So. 624, 60 Am.Rep. 107; Mayfield v. Cook, 201 Ala. 187, 77 So. 713; Manning v. Pippin, 86 Ala. 357, 5 So. 572, 11 Am. St.Rep. 46; Cox v. Hutto, 216 Ala. 232, 113 So. 40; Walker v. Yarbrough, 200 Ala. 458, 76 So. 390; Allen v. Bromberg, 147 Ala. 317, 41 So. 771; Schouler on Wills 792, section 691.

The court will not weigh with extreme nicety the balance between the value of the consideration and of the property transferred or to be affected. It was here fixed at $5,000 per annum during the life of the promisor, and a release from the worry and care of its attention. That is a sufficient consideration. 68 Corpus Juris 571, section 189; 1 Schouler on Wills 799, section 700; 1 Page on Wills 165, section 93.

Of course a contract is not enforceable to cut down a widow's dower. 68 Corpus Juris 588, note 68 and 69.

Our interpretation of the contract of September 11, 1919, is that it has two distinct aspects. It is in one of them a present conveyance or assignment to his two children of all the rights there described, which descended to him from his deceased wife and mother of the children. It is in another, and in terms, a present will and bequest to them of an undivided two-thirds' interest in all his other property. We do not think this feature of it is a deed. It does not use language which purports to pass a present interest, as did the former portion of it. The use of the words "will and bequeath" have no such import. In the latter feature of the instrument it is a contract n an expressed valuable consideration by which he wills and bequeaths. It is in substance a contract duly executed, whose meaning is that he will leave to those children an undivided two-thirds' interest in his real and personal property.

It was said in Noble v. Metcalf, 157 Ala. 295, 47 So. 1007, that when an instrument means in substance that its maker for a valuable consideration will make a "will" devising and bequeathing his property to another, it vests in such other no right or interest in any specific property during the life of such maker, and that the property of which he should be seized at the time of his death, the time when the will speaks, would be the property to be affected by the promise.

Of course, this intention may be made more manifest by expressly stating that it relates only to such property. Bolman v. Overall, supra; Cox v. Hutto, supra.

It is said in 1 Schouler on Wills, section 710, page 808, that a contract to leave one's property by will gives the promisor freedom to dispose of it during his life in good faith, unless it embraces specific property, "but any conveyance by him may be set aside if made to avoid performance or through fraud or undue influence."

"The weight of authority is that a contract to devise does not prevent the making of gifts during the lifetime of the promisor; but such gifts must be reasonable, absolute, bona fide, not testamentary in effect, and not made for the

purpose of defeating the contract to devise, nor having such effect." Skinner v. Rasche, 165 Ky. 108, 176 S.W. 942, 944.

"Any gift made with the actual intent to defraud would be void, but none made without such intent, unless so out of proportion to the rest of [the] estate as to attack the integrity of the contract, when it would be fraudulent as matter of law. The gift might be so large that, independent of intent or motive, fraud upon the contract would be imputed, or arise constructively by operation of law. Reasonable gifts were impliedly authorized. Unreasonable gifts were not, even if made without actual intent to defraud. In the absence of intentional fraud the question is one of degree, and depends upon the proportion that the value of the gift bears to the amount of the donor's estate." Dickinson v. Lane, 193 N.Y. 18, 85 N.E. 818, 820, 20 L.R.A.,N.S., 1154.

Again: "To say that a person has fulfilled his agreement to give to another all of his property at his death in consideration of valuable services performed by making his will in accordance with such agreement, and then to turn right around and annul and effectually destroy such testamentary provision by conveying away all of his property to another, leaving nothing whatever upon which the will could operate, would be but 'keeping the word of promise to the ear and breaking it to the hope.'" Bruce v. Moon, 57 S.C. 60, 35 S.E. 415, 419; 1 Page on Wills 185, section 102; 1 Schouler on Wills 809, section 710, note 5; Eaton v. Eaton, 233 Mass. 351, 124 N. E. 37, 5 A.L.R. 1426; 68 Corpus Juris 586, 587, section 204.

In the absence of such improper purpose, a will or a promise to make one, when supported by sufficient consideration, by which one in effect agrees to leave at his death his property to another, serves to exclude that which he may in his lifetime dispose of and to include what he may acquire and own at his death. Kisor v. Litzenberg, 203 Iowa 1183, 212 N.W. 343; 68 Corpus Juris 576, note 3(b); 1 Page on Wills 179, section 97, note 10.

We adopt the foregoing statements and extracts as correct principles of law applicable in this State.

We cannot agree with that feature of the final decree rendered in this case which makes the contract operative on all property of the promisor owned on September 11, 1919, without consideration of the principles discussed above.

If these contractees are indebted to decedent in any sum on account of their promise to pay him $5,000 a year during his life, the deficiency should be computed in making allowance for them under the testamentary contract. 1 Page on Wills 180, section 98, note 5. If this computation proves not to be an equitable adjustment, and there is a balance unpaid, it should be ordered paid by complainant as a condition to relief. And while we think the contract embraces after acquired property owned by decedent at the time of his death, any such balance of indebtedness by the contractees should not be considered for that purpose as a part of his estate. That amount was intended to be paid for the use and consumption of the decedent in his lifetime. The contract cannot be interpreted as meaning to include as a part of his estate so as to be devised to them that which was to be otherwise disposed of according to their understanding. Moreover, these contractees could not by making default enhance the value of their property rights under the contract.

Since the rights of these contractees cannot be affected by any adverse will, neither can they be affected by the creation of a trust with extraordinary charges against their interest. The expense provision of $5,000 annually for the widow as trustee can only be chargeable against so much of his estate as he could consistently with his prior contract make subject to the trust. That did not include the two-thirds' interest which was affected by the contract of September 11, 1919. That property interest would be subject to his debts and ordinary administration charges, but not to the provisions of a testamentary trust subversive of the obligations of his contract. 1 Page on Wills 179, section 97, note 11.

The trust provision of the probated will includes the property of the testator in a single unit. During the life of the two children and widow, they were to share equally in that part of the net income which was ordered distributed. After the death of the widow, the two children should receive it all. The trust should continue for ten years after the death of the widow and then the corpus was to be divided between the two children or their descend-

80

ants. If both were dead, with no descendants, then to others named.

We are holding that this trust provision is contrary to the contract of September 11, 1919, and the two children, contractees, are making the election in this suit to have their contract rights withdrawn from that trust, which we think they have a right to do. But they cannot do so and claim other benefits of that same trust. They thereby renounce all claims under it. As to them, the whole of the trust provision stands or falls as one feature of the will. The establishment of such contract rights terminates any reversionary or remainder rights as to the other one-third provided for in the will. 68 Corpus Juris 589, "Election between Will and Contract"; Towle v. Towle, 79 Wis. 596, 48 N.W. 800.

The provision of $5,000 annually set out in the probated will as compensation to the trustees, is not in terms limited to income for payment. It is a positive unambiguous direction, and has no restrictions of any kind, and payable at all events, regardless of the value of the services to be rendered or amount of the income. It is similar to a general legacy, or annuity, or provision for support. While it is stated to be for services as trustee, there may also be an inference that he had in mind the support and maintenance of his widow.

■ Our interpretation of the situation makes it apparently immaterial to complainant whether it is payable out of the corpus, since no part of her rights may be subjected, but it may be material in the future administration of the trust. And so we do say that we think it is payable out of the corpus as well as income. See Bradberry v. Anderson, Ala.Sup., 200 So. 762[1]; 3 Corpus Juris 213, note 24; 3 Corpus Juris Secundum 1381, section 5(b); 2 R. C. L. 8, section 13; 69 Corpus Juris 1188, section 2511; 2 Amer.Jur. 833, section 33; Thompson v. Bank of Tuskegee, 199 Ala. 67, 74 So. 37.

■ It is claimed that complainant cannot have relief on the theory that the contract is one to make a will of two-thirds of the property, because the bill of complaint declares that it is a present conveyance. But the bill sets out the contract in extenso. It speaks for itself. The interpretation of it as stated in the bill is not the statement of a fact, but a conclusion of law, in which neither the trial court nor this Court agrees.

The bill prays for a construction of the contract and its relation to the probated will and the relative rights of the parties under those instruments. This may be done though the decree is based on an interpretation of the contract different from that which the bill expresses to be the conclusion of complainant.

The decree in this case was not in all respects in conformity with our views here expressed. We think the decree should be reversed and the cause remanded for determination on the principles we have here declared.

Reversed and remanded.

GARDNER, C. J., BOULDIN and LIVINGSTON, JJ., concur.

