GERTRUDE CONNELL, appellee, v. CHESTER HAYS, as executor of estate of Meigs Hays, deceased, et al., appellants.

No. 50995.

(Reported in 122 N.W.2d 341)

June 11, 1963.

A. Wayne Eckhardt and Frank Drake, both of Muscatine, for appellants.

Stanley, Bloom & Mealy, of Muscatine, for appellee.

MOORE, J.—Plaintiff alleges in Division I of her petition that fourteen years prior to the death of Meigs Hays she made an oral contract with him that if she would continue as his housekeeper he would convey to her the home property at 109 West Sixth Street in Muscatine, that she performed her part of the agreement and prays for specific performance from defendants who are heirs-at-law and beneficiaries under his last will and testament. In Division II she asks recovery on quantum meruit and in Divisions III, IV and V for sums of money she claims she loaned him during his lifetime. Defendants' answer admits decedent in August 1947 requested plaintiff to move into his home to act as housekeeper and plaintiff did so pursuant to decedent's request, alleges she was paid in full for services rendered decedent and denies all other allegations of plaintiff's petition. After trial the court found for plaintiff on Division I and entered a decree ordering specific performance. Defendants have appealed.

Defendants rely on three propositions for reversal and present them in the form of questions.

1. Was there competent material or relevant evidence to establish a parol agreement upon the part of Meigs Hays to convey the real estate to plaintiff in consideration of her continuing on as his housekeeper, and did the proof with respect thereto reach the requirement of law?

2. Was the evidence introduced by defendants such as to lift the prohibition of Code section 622.4 and permit plaintiff in rebuttal to testify as to personal transactions and communications she allegedly had with decedent?

3. Is plaintiff bound by the admissions made in her pleadings?

We will consider them in the order propounded.

I. On trial the parties stipulated Meigs Hays, 77, died June 26, 1961, the titleholder of the real estate described as Lot 3, in Block 122, in the City of Muscatine, known as 109 West Sixth Street, where he had resided at all times material to this case, and it was worth between ten and thirteen thousand dollars at the time of his death. Also that defendants as sisters and brother of Meigs Hays and sole devisees under his last will and testament voluntarily appeared in court and by their attorneys, who also represented the executor of the Meigs Hays estate, and agreed the court be permitted to adjudicate their rights in the case. (Some, if not all, were nonresidents of Iowa.)

Mrs. Hazel Carlson, decedent's friend since 1910, testified she knew plaintiff was his housekeeper from 1947 until his death in 1961; decedent had a bedroom upstairs; plaintiff and her second husband since 1950 slept downstairs; they lived as one family; plaintiff did housework including washing and ironing for Meigs Hays; plaintiff bought, paid for and cooked food and meals for him; that on her many visits with him, he told her several times Gertrude was to have the home when he was through with it. The last time he made that statement was about two years before his death. She stated Meigs Hays never mentioned any payment to Gertrude other than giving her the home.

Part of her evidence was:

"Q. Now, in this conversation in 1948 or 1949, did Meigs Hays say anything about Gertrude and the disposition of his house at 109 W. Sixth in Muscatine? A. Yes, he did. He told me, in front of Margaret, that he had fixed the house so it would be Gertrude's when he was gone.

"Q. And did he say why Gertrude was to have the house? A. Those were his words. He said she made him the best home he ever had had. That's just the words he said. * * *

"Q. Do you recall a later conversation with Meigs Hays about the upstairs apartment in the Hays home? A. Yes.

"Q. And on that occasion what did he say to you about the house? A. He said he had—was making the upstairs into an

apartment, so that when he was gone Gertrude would have an income, that there would be an income for her.

"Q. And did he say anything at that time about Gertrude's home after Meigs Hays' death? A. Well, he said it was to be Gertrude's when he was dead; that the home was to be hers; the house was to be left to her."

She stated that on one occasion Meigs Hays, when referring to fixing over the bathroom and kitchen, said: " 'I don't know too much about it. I left it up to Gertrude because it will be hers. So I let her fix it, let her have the say of it.' "

Mrs. Josephine Van Dyke, a friend of Meigs Hays since 1927, testified when the apartment was being made in the house decedent told her he wanted to see that Gertrude had some kind of an income after his death and that the house was to be hers. Also that he made statements at numerous times, including the spring of 1960, that Gertrude was just like a daughter and the house would be hers when he died. These statements on several occasions were made in plaintiff's presence.

Dr. George A. Blackwood, friend and fishing partner of decedent, stated decedent told him Gertrude and Ralph (her second husband) were not to be paid but they were to be taken care of and that he had made arrangements for them to have the home. He testified he was sure decedent told him Gertrude was to pay part of the siding.

Mrs. George A. Blackwood testified decedent made statements at various times that he was fixing the house up for Gertrude, she was paying part of the siding and sidewalk, and the house was to be hers upon his death.

Checks showing payment by plaintiff for siding and sidewalk are in the record.

Dennis K. Frey testified that while on a fishing trip with decedent in 1954 or 1955, Mr. Hays said he was very fortunate to have such friends as the Connells who would look after him as they did, and he would see they were taken care of for what they had put out for him in the years they had taken care of him. Frey stated Mrs. Connell took care of the residence as if it were her own place.

Another witness testified that on March 3, 1956, he installed an iron railing at the home and that plaintiff paid him $30 by check (plaintiff's Exhibit 4).

Some of these witnesses and others describe the services of plaintiff, including washing and ironing decedent's clothes, papering the apartment and driving him to Davenport many times. Plaintiff's services as a housekeeper were estimated to be worth $35 per week plus living quarters. The meals furnished decedent were estimated to be worth $3.50 per day. The record discloses decedent often stated there was no reason to do anything for his relatives as they never did anything for him. Decedent's will was executed in 1944.

Defendant Chester K. Hays, decedent's brother and executor of the estate of Meigs Hays, testified a friendly relationship existed between the brothers and that decedent frequently visited at his home. He identified a series of checks written by decedent to plaintiff starting in April 1955 and continuing at about one each month until the time of decedent's death. They ranged from $12.50 to $49.40 and most ended in an odd number of cents. On many the notation "utilities" was written.

He stated about four weeks after his brother's funeral, in the presence of Attorney Drake and his sister Audrey M. Hays, he had a conversation with plaintiff. He testified:

"Well Audrey asked her what arrangements they had there, and she said that Meigs furnished the house and all the utilities and paid the taxes, and they boarded him for his room—for board and room.

"Q. Is that your answer to the question, that they boarded —they boarded him for whose board and room? A. For his board and room he paid everything.

"Q. And in the conversation did Mrs. Gertrude Connell tell you what she was to do with respect to what she was to furnish, if anything? A. She was to furnish his board and room, with them living there."

Defendant Audrey M. Hays testified regarding that conversation:

"Q. And what was the conversation with respect to the

financial arrangement that was had between Mr. Meigs Hays and Mrs. Connell, if you remember? A. Well, Mr. Drake informed her that he came up—or we came up to take an inventory of things that belonged to Meigs, and we sat down at the kitchen table and she listed the things in the house which he said—which she said were his. And after that, why I said to her 'How many years have you lived in this house?' She said 'Fourteen. About fourteen.' I said, 'Who paid the taxes on this house?' She said 'He did.' I said, 'Who paid the utilities and the fuel and the telephone and all the other incidentals?' She said, 'He did.'

"She said they had never paid rent. I don't recall that anything was discussed about the groceries.

"Q. You don't remember about that? A. No, I don't recall. But—But she said that he paid all the bills, and he had his board and his room upstairs, and there was a back stairway leading from the kitchen up to his room."

She also testified that several years before her brother's death plaintiff said they had tried to buy the house from Meigs but he did not want to sell it.

A realtor expressed his opinion the fair rental of the downstairs with utilities furnished was $85 per month.

Over plaintiff's objection that any statements made to defendants' witness H. H. Holliday by decedent were self-serving, the trial court permitted him to testify decedent told him he rented his house to Mr. and Mrs. Connell for his board and room, and he was to furnish heat. The trial court considered this testimony in his findings. In argument plaintiff contends this was error. We need not decide the question. Plaintiff prevailed. The great weight of the evidence is to the contrary. If error it was without prejudice.

On rebuttal, plaintiff before any objection was made testified:

"Q. And did you hear Mr. Chester Hays state to the fact of an agreement which existed between Meigs Hays and you? A. Yes.

"Q. And Chester Hays stated that Meigs Hays was to pay

the utilities and taxes, and Gertrude Connell was to pay for the groceries and cook the meals for her rent. Was this the entire agreement spoken of or referred to between Meigs Hays and you? A. No.

"Q. What then was left out, Mrs. Connell? A. That the house was to go to me at his death.

"Q. When was this agreement made between you and Meigs Hays? A. In October 1947."

No motion to strike this testimony was made. Some subsequent questions regarding the agreement between plaintiff and decedent and the series of checks introduced by defendants were objected to for the reason plaintiff was incompetent to testify to those transactions under Code section 622.4, commonly referred to as the dead man statute. We shall discuss these issues later.

This type of case is not new to this court. The general rules of law applicable seem well established. Our review is de novo. Rule 334, Rules of Civil Procedure. In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound by them. No authorities need be cited for this. Rule 344(f)7, R. C. P.

■ Proof of the claimed oral contract must be clear, satisfactory and convincing. A mere preponderance of the evidence is not sufficient. See Williams v. Harrison, 228 Iowa 715, 723, 293 N.W. 41, 44, where excerpts from our earlier cases are set out; Bell v. Pierschbacher, 245 Iowa 436, 439, 62 N.W.2d 784, 786, and citations.

■ We have often said this type of case belongs to a class which usually challenges the scrutiny and skepticism of the court. It imposes upon the court the special duty of receiving the testimony subject to every fair test which tends to weaken its credibility. Citations and quotations from our many cases establishing this rule are found in Byers v. Byers, 242 Iowa 391, 404, 406, 46 N.W.2d 800, 807, 808.

To perform this duty many factors require our attention and consideration. In Francis v. Francis, 180 Iowa 1191, 1205, 162 N.W. 839, 844, it is said:

"The evidence should be closely scrutinized and weighed in accordance with its reasonableness and inherent probability. The rule is wholesome, and is adhered to; but it does not follow that, if the witnesses are credible, and the stories they tell are reasonable, the courts are required to disbelieve, simply because it is not contradicted."

Plaintiff's witnesses to decedent's admissions were his friends. They had no interest in the outcome of the case. Their testimony seems reasonable and worthy of belief.

Garman v. Wettengel, 199 Iowa 1150, 1151, 203 N.W. 266, 266, states:

"This case belongs to a class which usually challenges the scrutiny and the skepticism of the court. * * * Needless, perhaps, to say that the substantial equity, or want thereof, which supports the claim of plaintiff is always an influential consideration."

See also Kisor v. Litzenberg, 203 Iowa 1183, 1187, 212 N.W. 343, 345.

The record discloses plaintiff worked fourteen years, furnished food worth thousands of dollars for only house rent unless the claimed oral agreement was made. The equities are with plaintiff.

The acts of plaintiff and decedent must likewise be considered to determine if they were consistent with the existence of the claimed oral agreement. Particularly where improvements were made on the property. Bevington v. Bevington, 133 Iowa 351, 356, 110 N.W. 840, 843, 9 L. R. A., N. S., 508, 12 Ann. Cas. 490; Ozias v. Scarcliff, 200 Iowa 1078, 1085, 205 N.W. 986, 990. Plaintiff's paying for an iron railing, siding and sidewalk and other improvements of the property is consistent only with the claimed oral contract.

After careful and skeptical reading of the admissible evidence we are convinced the oral agreement claimed by plaintiff in Division I has been shown by the quantum and quality of proof required.

II.. After plaintiff had testified to the oral contract without objection, defendants later made objections to some ques-

tions concerning the agreement made in October 1947. Their objection was that the witness was incompetent under Code section 622.4. They made the same objection to her testimony in reference to the series of checks offered by them. The trial court did not follow the usual rule in equity of taking answers subject to objection. They were overruled. Plaintiff testified in detail as to the claimed oral agreement and also that the checks were for utilities. Defendants claim the court erred in receiving this evidence. Plaintiff argues defendants' evidence lifted the prohibition of the dead man statute.

The effect of the statute is to make the witness incompetent to testify. There is no provision that the evidence of such witnesses is not competent if admitted without objection at the time offered. The statute is evidentiary rather than substantive. Slattery v. Slattery, 120 Iowa 717, 723, 95 N.W. 201, 203; Olsen v. Olsen, 236 Iowa 313, 320, 18 N.W.2d 602, 606; 97 C. J. S., Witnesses, section 246, page 731.

Assuming the objection to questions regarding additional details of the claimed oral contract should have been sustained, we are unable to find any prejudice. However, without deciding the question, we have disregarded plaintiff's testimony taken over objection. For the most part it added little, if any, to plaintiff's testimony which went into the record without objection.

Code section 622.4 provides: "No party to any action * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased, * * * against the executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, or survivor of such deceased person * * *."

Thus plaintiff was incompetent to testify to the check transactions with decedent from 1955 until shortly before his death unless the prohibition was waived under the provisions of Code section 622.5. It provides: "Exceptions. This prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee, survivor, or guardian shall be examined on his own behalf * * *."

Chester K. Hays, executor, devisee and heir-at-law, tes-

tified about the series of checks and offered them in evidence in an apparent effort to negative the claimed oral agreement and prove payment. Defendants thereby lifted the prohibition. They opened the door. The trial court properly allowed plaintiff, in rebuttal, to testify these checks were given for utilities. Our conclusion is supported by Bailey v. Keyes, 52 Iowa 90, 2 N.W. 1025; Kauffman v. Logan, 187 Iowa 670, 174 N.W. 366; In re Estate of Armstrong, 191 Iowa 1210, 183 N.W. 386.

■ ■ III. In Divisions III, IV and V of her petition plaintiff pleads she loaned decedent money and asks recovery for the amounts thereof which are the same as the items shown to have been spent for the siding, sidewalk and iron railing for the house. Defendants argue these pleadings are admissions which must be taken as true and binding on plaintiff. Defendants' contention is not tenable. The trial court found the case was tried on the theory that in event plaintiff prevailed on Division I the remaining divisions would not be pursued. He found plaintiff had pleaded the other counts in the alternative in the event she was unsuccessful on Division I and those pleadings were not to be considered as admissions. We agree. The rule is well established that a party may plead in the alternative although there may be only one recovery. Halstead v. Rohret, 212 Iowa 837, 235 N.W. 293; Weaver Construction Co. v. Farmers National Bank, 253 Iowa 1280, 1291, 115 N.W.2d 804, 810, and citations.

■ Defendants also argue that because their answer to each division of plaintiff's petition alleges payment, to which no reply was filed, plaintiff has admitted payment under the provisions of rules 73 and 102, Rules of Civil Procedure. This claim is without merit. In Division I plaintiff alleges nonperformance of the claimed oral agreement to convey the real estate. In the other divisions plaintiff asks payment of the sums claimed.

■ We have frequently pointed out if the facts stated in the petition contradict facts stated in the answer the issues are joined without the necessity for a reply. State ex rel. Kuble v. Capitol Ben. Assn., 237 Iowa 363, 21 N.W.2d 890; Shalla v. Shalla, 237 Iowa 752, 23 N.W.2d 814; Henderson v. Hawkeye-Security Ins. Co., 252 Iowa 97, 106 N.W.2d 86; Federated

Mutual Implement and Hardware Ins. Co. v. Erickson, 252 Iowa 1208, 110 N.W.2d 264.

Another reason to reject defendants' contention is that the issue of nonperformance was tried without defendants raising any question as to reply. Where parties proceed to try an issue without raising any question as to reply, it amounts to consent to try the issue and it is rightfully in the case. Federated Mutual etc. v. Erickson, supra, and citations. (Loc. cit. page 1219)

We conclude upon the whole record the decision of the trial court must be affirmed.—Affirmed.

All JUSTICES concur except LARSON, J., who dissents.