ESTATE of William H. THOMPSON, Deceased, Mary Lou Barnett, Ruby Nunn, Robert Baldwin, Appellants,

v.

James O'TOOL and Juletta O'Tool, Husband and Wife, Appellees.

No. 53660.

Supreme Court of Iowa.

March 10, 1970.

Crary, Huff & Yates, Sioux City, for appellants.

Thomas L. McCullough, Sac City, for appellees.

LeGRAND, Justice.

This is an action for rent under a farm lease. The defendants claim an offset, asserting they performed certain work and made certain improvements under an oral agreement with their landlord for which they are entitled to compensation. The trial court found that defendants owed $16,000.00 in rent, allowed them an offset of $13,662.50 for repairs and improvements, and entered judgment for plaintiffs in the amount of $2367.50. Plaintiffs appeal.

We agree as to the amount of rent due but find defendants are not entitled to credit for any repairs or improvements allegedly made by them. Consequently we modify that portion of the decree and enter judgment in favor of plaintiffs for $16,000.00, the full amount of the rent due.

Since most of the testimony concerns W. H. Thompson, now deceased, and James O'Tool, we refer to them as though they were the sole parties. However, what we say applies equally to all plaintiffs and to both defendants.

■ The record shows some uncertainty as to the nature of this action, but it was agreed the matter was triable in equity. Under our rules we therefore consider this as an equity case triable de novo. McCullough Investment Company v. Spencer, 246 Iowa 433, 436, 67 N.W.2d 924, 925, and citations; Mahon v. Mahon, 257 Iowa 563, 568, 133 N.W.2d 697, 700. It follows that the trial court's findings are not binding upon us, although we give them consideration in reaching our own conclusion. Rule 344(f) (7). Rules of Civil Procedure; Connell v. Hays, 255 Iowa 261, 268, 122 N.W.2d 341, 345.

■ Defendant had been a tenant on the 400-acre farm in question since 1942. On October 17, 1955, a written lease was entered into for a one year period beginning March 1, 1956, at a cash rental of $7000.00. No notice of termination was given over the ensuing years by either party, and the lease stood renewed from year to year thereafter until 1967 under the terms of sections 562.6 and 562.7, Code of Iowa.

W. H. Thompson owned an interest in the farm and also acted as agent for the other owners. He was the only person with whom defendant had any negotiations or conducted any business over the period of the lease.

Mr. Thompson died in December of 1966. Shortly after his death his executor discovered from the farm records that defendant was delinquent in rent payments. On behalf of the W. H. Thompson estate, the executor, joined by the other owners of the farm, brought this action to recover the unpaid rent. In his answer defendant claimed credit in an amount equal to the unpaid rent for work done and improvements made under an oral contract entered into with W. H. Thompson. He denied any rent was due or owing. Plaintiff asserts the trial court erred in allowing defendant any offset and relies on the following propositions for reversal:

(1) There is no competent evidence of the alleged oral agreement permitting defendant credit for repairs and improvements made;

(2) The testimony concerning said alleged oral agreement is so vague, indefinite and uncertain that it could not in any event establish the alleged oral agreement;

(3) All of defendant's evidence was in violation of the parol evidence rule;

(4) The testimony offered by defendant to prove the alleged oral agreement was inadmissible under the dead man statute, section 622.4, Code of Iowa;

(5) The defendant did not sustain the burden of proving the making of said repairs and improvements and the reasonable cost thereof; and

(6) The judgment of the court allowing $13,662.50 was excessive.

In view of our conclusion that defendant has failed to establish the oral lease upon which he relies, we need consider only the first of these propositions.

The written lease of October 17, 1955, heretofore referred to, contained the following provision:

"* * * The said James O'Tool, Jr. and Juletta O'Tool, parties of the second part, do hereby waive and release any claim they or either of them have for any improvements they or either of them may have placed upon the leased premises and for any money, materials, labor or other expenses incurred, paid or furnished by them or either of them for said real estate and improvements. *This waiver and release applies to all past expenditures as well as such future expenditures by them made during the term of this lease.*" (Emphasis added.)

Despite this specific provision, which strongly suggests the parties were attempting in advance to avoid the very type of controversy which has now arisen, defendant contends that within a month or two thereafter this provision was virtually scrapped and plaintiff orally gave him unlimited authority to make repairs and improvements and agreed to credit his rent for the work done.

■■ Plaintiff resisted all effort to establish an oral agreement modifying the written lease of October 17, 1955. He claimed all such evidence was inadmissible because it attempted to vary the terms of a written contract in violation of the parol evidence rule. We must disagree. The purpose of the testimony was to show a new agreement made subsequent to the date of the lease. While it is quite true,

such an agreement may have modified, or even cancelled, the written agreement, it would have done so by separate contract, not by changing the terms of the old one.

Parties to a contract, in the absence of some legal impediment, may change their agreement by making a new one which meets the requirements of contractual relationship. 17A C.J.S. Contracts section 377(c), page 437; 17 Am.Jur.2d, Contracts, sections 465–467, pages 934–939; Baie v. Nordstrom, 238 Iowa 866, 869, 29 N.W.2d 211, 213; Gard v. Razanskas, 248 Iowa 1333, 1340, 85 N.W.2d 612, 616, 65 A.L.R. 2d 982. See also Davenport Osteopathic Hospital Association of Davenport, Iowa v. Hospital Service, Inc., Iowa, 154 N.W.2d 153, 157.

We hold it was proper to show an oral agreement subsequent to the written lease by which defendant would be compensated for work done and improvements made. The troublesome question is not whether he *could* prove such a modification, but whether he *did*.

■ To succeed here defendant must establish that oral contract. He is at once confronted with the serious obstacle that any conversations he or his wife may have had with W. H. Thompson concerning this matter are rendered incompetent by virtue of section 622.4, Code of Iowa, the dead man statute. The trial court, correctly we believe, excluded all such evidence in reaching its decision. We do likewise, but we reach different conclusions than those of the trial court based upon the competent evidence in the record.

■ Before reviewing this evidence, we point out defendant has the burden in this equitable action of proving his oral agreement by clear and satisfactory evidence. Davis v. Davis, Iowa, 156 N.W.2d 870, 874. We refer briefly to a few of our pronouncements concerning the type of evidence which defendant must unfortunately rely upon here.

In Williams v. Harrison, 228 Iowa 715, 722, 293 N.W. 41, 44, we said, "It has always been the holding of this court, and of the courts generally, that claims of this kind [based on oral contracts for services rendered to a decedent] should be scrutinized with the greatest care, and established only upon the most satisfactory evidence." We there mentioned some of our previous holdings to the same effect in which we uniformly held a high degree of proof necessary to establish a claim based upon an oral agreement with a party since deceased.

In Byers v. Byers, 242 Iowa 391, 404, 405, 46 N.W.2d 800, 807, 808, we put it this way:

" * * * There can be no testimonial contradiction or denial of the testimony of these five witnesses because the lips of Nathan N. Byers, with whom they talked, are sealed in death. Such testimony has been presented to this court many, many times since the court was organized, in various kinds of cases in law, equity, probate, and criminal prosecution, and just as often the court has announced that such testimony is heard with doubt and skepticism, examined with the closest scrutiny, subjected to the most severe tests which tend to weaken its credibility, and carefully, jealousy and cautiously weighed and considered. Some of the reasons why such testimony is uniformly regarded as so dangerous and unsatisfactory are: because of the ease of its fabrication, the impossibility of its controversion, the grievous consequences which may result from the fallability of human memory, understanding or judgment, and the absence of worldly sanction, since from the nature of such evidence, no witness so testifying could ever be convicted of perjury. Such testimony is not accepted as conclusive simply because it cannot be directly denied. It must, nevertheless, pass the test of credibility in the light of surrounding circumstances and its inherent probability or improbability, as judged by common experience and the ordinary rules of human conduct in like situations."

In Bell v. Pierschbacher, 245 Iowa 436, 444, 62 N.W.2d 784, 789, we said, "We have repeatedly pointed out that evidence of claimed oral statements of a decedent should be closely scrutinized and cautiously received because it is not susceptible of denial and the witness may not have been capable or desirous of accurately relating what decedent may have said."

A similar statement is found in Nelson v. Nelson, 249 Iowa 638, 642, 87 N.W.2d 767, 770.

In Connell v. Hays, 255 Iowa 261, 268, 269, 122 N.W.2d 341, 346, we again considered the same problem and held, "Proof of the claimed oral contract must be clear, satisfactory and convincing. A mere preponderance of the evidence is not sufficient. * * *

"We have often said this type of case belongs to a class which usually challenges the scrutiny and skepticism of the court. It imposes upon the court the special duty of receiving the testimony subject to every fair test which tends to weaken its credibility." We there cite additional authority from our previous opinions supporting this view.

Our task now is to determine if defendant's evidence meets this strict test, and if it establishes his claimed oral contract by "clear, satisfactory, and convincing proof." Practically all of it is subject to the skepticism and close scrutiny required of us. Defendant depends entirely upon the testimony of three witnesses: his two sons and a neighboring farmer.

One of the sons, Dennis O'Tool, testified in substance:

"There were probably seven or eight times between 1955 and now (1968) that I was present on my father's farm when Mr. Thompson was there. I did not take part in the talking. I would just sit there and they would talk about the farm and what it

needed. Mr. Thompson would say you go ahead and fix it up and if it needed replacing or repairing, why, he would say repair it and it would be taken out of the rent and he would pay for it, one of the two. He said it would be cheaper that way. I remember my folks discussing with Mr. Thompson some of the [specific] matters [for which claim is made.] I helped with making quite a few of the improvements * * *. I never heard Mr. Thompson say mother and dad owed him any money for rent."

The other son, Merle O'Tool, testified substantially to the same effect. He stated he specifically remembered discussions involving the clearing of the land, the well and the waterworks, and the garage and several buildings.

The other witness was Ralph Rauch. He testified to having had a conversation with Mr. Thompson in 1956, twelve years before trial, in which they discussed Mr. O'Tool as a tenant. Mr. Rauch testified, "We talked about many things. Mr. O'Tool was a pretty good friend of mine and we got on the conversation of Mr. O'Tool. I think I mentioned that he sure was doing a nice job out there and Mr. Thompson said he was. He said, 'I think very highly of Mr. O'Tool.' At that time I believe he was putting in a cement silo. We talked about that and I said, 'Mr. O'Tool certainly has improved your farm for you,' and he said, 'He certainly has and I really appreciate it,' and he says that he tells Mr. O'Tool to go ahead and do these things and then later he will take it off the rent. That was the part of the conversation as I remember it."

This was the full extent of the evidence concerning an oral lease. It will be noted the conversations go back 12 or 13 years. Some of the statements of the sons undertake to recall conversations they heard years before when they were youngsters. To say the very least this is unsatisfactory proof, particularly since the sons are not entirely disinterested in the outcome of this litigation.

Similarly it is difficult to consider Mr. Rauch's single casual conversation in 1956 as "clear and convincing" proof of an agreement to make unlimited improvements in the indefinite future.

One serious difficulty with all this testimony is that it is entirely inconsistent with the conduct of the parties. The repairs and improvements for which claim is made include 20 separate items, some large, some small. Many of them were completed in 1957, 1958, and 1959. Virtually all were before 1962, except as to a few concerning which defendant stated he "did not remember" the date the work was done. Yet during all this period defendant continued to pay his cash rent of $7000.00 per year.

We said in Connell v. Hays, supra, at page 269 of 255 Iowa Reports, 122 N.W.2d 341, that the acts of the parties may be considered to determine if they were consistent with the existence of the claimed oral agreement, particularly when improvements are made to property.

Admittedly the conduct of neither party here is entirely reconcilable with the positions now taken. We find it incredible that defendant would continue to expend thousands of dollars in improvements, both in labor and materials, while paying his cash rent each year without securing the credit to which he now says he was entitled. It is equally difficult to understand why plaintiff would permit almost three years rent to accumulate without protest and without some action to compel payment.

In considering the conduct of the parties we are forced to shackle defendant with the burden which is legally his—to prove his agreement by clear, convincing, and satisfactory evidence. We find no reasonable explanation for his failure to demand and secure credit for his claim from year to year as his rent became due.

Neither do we find an explanation for defendant's delay in making this claim until after the death of the only person who could refute it. One answer might be that

the amount of unpaid rent approximately equalled the amount to which he as entitled for repairs and improvements. However, this argument loses much of its persuasion when we consider the following letter written by defendant to W. H. Thompson in 1965:

"Auburn, Iowa,

December 21, 1965

"Dear Mr. W. A. H. Thompson, * * * Hicks was here a few times & wanted me to pay for the pump that we had to replace a year ago. Our water fountain was also in need of replacing this fall. I thought I could pay you $5000.00 now & try to pay you some more later. I have just paid Mr. Hicks which was $510.00. I will send you a check for $4490.00 but will you hold it until you have signed the [lien waiver] and returned it to the Sac County ASCS office. * * *.

"Yours truly,

James O'Toole"

We believe this letter is important. First, it is to be noted Mr. O'Tool made claim for credit for repairs he had authorized; secondly, he paid $5000.00 on the rent and stated he would try to pay more later; and third, he made no mention of any credits he claimed except the one which he deducted from the cash rent payment.

This letter does not bear out the position defendant now takes. It was written in December 1965. Yet Mr. O'Tool, who asked for and received credit for $510.00 while paying part of his rent and promising to pay more, now says at *that time* he was entitled to credit of more than $13,000.00. We find the evidence falls far short of establishing this claim by the quantum of proof required by the cases heretofore referred to.

Since we conclude defendant has failed to establish his oral contract, it follows he is not entitled to an offset for work and improvements. The trial court found the unpaid rent to be $16,000.00. Defendant claims the correct amount is $14,000.00. However, we agree with the trial court that the evidence discloses $16,000.00 as the correct amount.

After allowing defendant credit for repairs and improvements, the trial court entered judgment for plaintiff in the amount of $2367.50, together with interest at five percent per annum from the date of the decree, and costs, including statutory attorney fees. We modify the decree to provide that plaintiff have judgment for $16,000.00.

We remand to the district court for entry of judgment in accordance herewith and for re-assessment of interest and costs, including statutory attorney fees.

Modified and remanded with instructions.

All Justices concur except UHLENHOPP, J., who takes no part.